**WINSTON–SALEM/FORSYTH COUNTY UNIT OF the NORTH CAROLINA ASSOCIATION OF EDUCATORS, an unincorporated association, and Jacqueline A. Ballentine, Individually and on Behalf of other similarly situated teachers in the Winston-Salem/Forsyth County School System, Plaintiffs,**

v.

**A. Craig PHILLIPS, State Superintendent of Public Instruction, et al., Defendants.**

No. C–286–WS–72.

United States District Court,
M. D. North Carolina,
Winston-Salem Division.

Argued July 12, 1974.

Decided Sept. 18, 1974.

William G. Pfefferkorn, Winston-Salem, N. C., for plaintiffs.

Edwin M. Speas, Jr., Asst. Atty. Gen., N. C. Dept. of Justice, Raleigh, N. C., for defendants A. Craig Phillips, Frank Crane, and Robert B. Morgan.

William F. Womble, Jr., of Womble, Carlyle, Sandridge & Rice, Winston-Salem, N. C., for Winston-Salem/Forsyth County School Bd.

P. Eugene Price, Jr., County Atty., Winston-Salem, N. C., for Forsyth County Bd. of Commissioners, and the County of Forsyth.

Before CRAVEN, Circuit Judge, GORDON, Chief District Judge, and WARD, District Judge.

## OPINION OF THE COURT

HIRAM H. WARD, District Judge.

This case presents a renewed attack on North Carolina General Statute § 95–98 which provides that contracts between state governmental units and public employee labor organizations shall be void.[1] Previously, in Atkins v. City of Charlotte, 296 F.Supp. 1068 (W.D.N.C. 1969), a three-judge court upheld the constitutionality of that statute while declaring related sections to be unconstitutional.[2]

In the instant case, plaintiffs request injunctive and declaratory relief against the statute on the grounds that it operates to violate their rights of freedom of association guaranteed by the First Amendment of the United States Constitution and of equal protection and due process guaranteed by the Fourteenth Amendment. Jurisdiction is premised upon 28 U.S.C. §§ 2201 and 1343 and 42 U.S.C. § 1983. A three-judge court has been properly convened pursuant to 28 U.S.C. §§ 2281 and 2284.

Plaintiff Winston-Salem/Forsyth County Unit of the North Carolina Association of Educators is an unincorporated labor association representing professional employees, including teachers and administrators. The individual plaintiff is a teacher in Forsyth County and a member of the association. She wishes to represent all teachers in the Winston-Salem/Forsyth County School System. The defendants are State officials, the Winston-Salem/Forsyth County School Board, the Forsyth County Board of Commissioners, and the County of Forsyth.

The discontinuation of a salary supplement plan in 1972 supplied the irritant which caused plaintiffs to bring this action. In 1967, the school officials proposed the plan whereby the teachers in the Winston-Salem/Forsyth County school district would receive a portion of a school tax as part of their salary supplement. Since the supplement was tied to a county tax, it would increase along with the tax base of the county. The school board approved the plan. In 1972, the County Commissioners terminated the plan when they adopted the final budget for the county. Plaintiffs admit that no one source can be blamed for the discontinuation of the plan. They say that the determination of local school salaries results from input by the State Board of Education and the local units composed of the school board and county commissioners. Plaintiffs suggest that one of the reasons for the termination of the salary supplement was the discovery of the statute, N.C.G.S. § 95–98, by the governmental officials between 1967 and 1969. Plaintiffs claim that upon this discovery, the school offi-

---

1. N.C.G.S. § 95–98 reads as follows:

   Contracts between units of government and labor unions, trade unions or labor organizations concerning public employees declared to be illegal.—Any agreement, or contract, between the governing authority of any city, town, county, or other municipality, or between any agency, unit, or instrumentality thereof, or between any agency, instrumentality, or institution of the State of North Carolina, and any labor union, trade union, or labor organization, as bargaining agent for any public employees of such city, town, county or other municipality, or agency or instru-

   mentality of government, is hereby declared to be against the public policy of the State, illegal, unlawful, void and of no effect.

2. The statutes declared unconstitutional in Atkins, supra, were N.C.G.S. § 95–97, which prohibited fire fighting employees of a governmental unit from becoming members of or from assisting a labor organization which was affiliated with a national or international labor organization that had collective bargaining as one of its purposes, and N.C.G.S. § 95–99, which provided a criminal penalty for violation of the related sections of the chapter.

cials became increasingly intransigent in their discussions with the teachers' association. They would like to blame a drop in their membership to their claimed growing ineffectiveness in discussions with the school officials after the purported discovery of N.C.G.S. § 95–98.

■ In this case, there never was a signed contract between the teachers' organization and the school board. Defendants suggest that plaintiffs lack standing because there is no contract which is rendered void by N.C.G.S. § 95–98. We agree that the plaintiffs never had a contract or agreement with the school. However, we read that fact as the basis of their complaint. They say that the school refuses to enter into a contract with them, or even engage in meaningful discussion, because of the statute. Viewed in this light, the question before this court is not moot and plaintiffs have standing to litigate the issue.

Plaintiffs allege that the statute is unconstitutional because of the detrimental effect it has on their ability to associate in a labor organization. They contend the statute renders nugatory their right to associate since it voids any contract obtained by the association. Thus, they say, it becomes fruitless for the organization to discuss matters with the school, and the individual teachers in turn become disenchanted with their organization.

■ Accepting those consequences as true, we cannot accept the premise that plaintiffs' alleged right of association requires that state governmental units negotiate and enter into contracts with them. The Constitution does not mandate that anyone, either the government or private parties, be compelled to talk to or contract with an organization. What Judge Craven wrote in *Atkins, supra,* at 1077, is controlling and bears repeating:

We find nothing unconstitutional in G.S. § 95–98. It simply voids contracts between units of government

within North Carolina and labor unions and expresses the public policy of North Carolina to be against such collective bargaining contracts. There is nothing in the United States Constitution which entitles one to have a contract with another who does not want it. It is but a step further to hold that the state may lawfully forbid such contracts with its instrumentalities. The solution, if there be one, from the viewpoint of the firemen, is that labor unions may someday persuade state government of the asserted value of collective bargaining agreements, but this is a political matter and does not yield to judicial solution. The right to a collective bargaining agreement, so firmly entrenched in American labor-management relations, rests upon national legislation and not upon the federal Constitution. The State is within the powers reserved to it to refuse to enter into such agreements and so to declare by statute.

■ The other cases considering the problem raised here have likewise rejected plaintiffs' argument. Newport News F.F.A. Loc. 794 v. City of Newport News, Va., 339 F.Supp. 13 (E.D.Va. 1972); Hanover Tp. Fed. of Teach. L. 1954 v. Hanover Com. Sch. Corp., 457 F.2d 456 (7th Cir. 1972). While the First Amendment may protect the right of plaintiffs to associate and advocate, not all of their associational activities have the protection of that amendment. The State is not required to provide plaintiffs with a special forum in order to advocate their views. It is under no duty to provide a "guarantee that a speech will persuade or that advocacy will be effective." Hanover Tp. Fed. of Teach. L. 1954 v. Hanover Com. Sch. Corp., *supra,* at 461.

Plaintiffs' reliance on Healy v. James, 408 U.S. 169, 92 S.Ct. 2338, 33 L.Ed.2d 266 (1972), in support of the request for reconsideration of *Atkins* is misplaced. *Healy* concerned a college's denial of recognition to a student group.

The Court held that the nonrecognition abridged the student group's First Amendment rights. The college had denied the group a formal meeting place, and the use of college bulletin boards and the college newspaper. Significantly, it had granted those rights to other student groups. The court noted that "the group's possible ability to exist outside the *campus community* does not ameliorate significantly the disabilities imposed by the President's action." (408 U.S. at 183, 92 S.Ct. at 3247, 33 L. Ed.2d at 280). Thus the restriction in *Healy, supra,* directly affected the student group's right of advocacy and ability to organize in a situation where the college had granted those rights to other groups. In the present case the statute we are concerned with does not differentiate between public employee labor associations, nor does it restrict in any material way the ability to organize.

■ In *Healy, supra, t*he college's action materially and discriminatorily affected the student group's right to speak and advocate. Here the statute has no such effect. All that it does is to render void contracts between the labor association and the State. As stated previously, the First Amendment does not guarantee that an organization's advocacy will be effective; it only protects the right to speak.[3]

■ The State, as a matter of public policy, has chosen not to enter into enforceable contracts with public employee organizations. That policy decision cannot be regarded lightly, or as merely the result of anti-union animus. The decision of whether to permit public employees to engage in collective bargaining with the government involves far greater interests than the mere right to association claimed by the plaintiffs here. Professor Sylvester Petro in "Sovereignty and Compulsory Public-Sector Bargaining," 10 Wake Forest Law Review 25 (1974), ably and thoroughly discusses the case against the recognition of public employee labor organizations and bargaining with them. Even in an article more sympathetic to plaintiffs' position Professor Summers discusses serious problems which cannot be avoided if collective bargaining is permitted. *See* Summers, "Public Employee Bargaining: A Political Perspective," 83 Yale Law Journal 1156 (1974). There the author views collective bargaining by public employees as part of the political decision-making process. As such it cannot be fairly compared with collective bargaining in the private sector. While he sees collective bargaining in the public sector as giving the public employees a chance to give unity, clarity, and persuasion in discussing their views with a governmental body, he also notes that, at present, permitting public employee collective bargaining might well overshift the balance of power because of the inability, in some instances, of present governmental structure to effectively deal with a collective bargaining situation. Moreover, to the extent that the public employees gain power through recognition and collective bargaining, other interest groups with a right to a voice in the running of the government may be left out of vital political deci-

3. In Aurora Ed. Ass'n E. v. Board of Ed., Etc., Kane County, Ill., 490 F.2d 431 (7th Cir. 1973), the court distinguished Hanover Tp. Fed. of Teach L. 1954 v. Hanover Com. Sch. Corp., *supra,* from the issue before it concerning whether a school could penalize a teacher who merely *believed* that teachers should be given the right to strike. It said at 434:

> Whatever else may be said about that case, it dealt with the question whether a public body is under a constitutional duty, apart from statute, to bargain collectively with the labor representative of its employees. There was no occasion to consider in that case, and the court did not consider, the problem of this case, that is, whether a public body may interfere with its employees' freedoms to think and to speak—which from the beginning of time have been recognized as wholly different from the freedom to associate and to seek to use the strength which comes from union in assembly and action. See Wyzanski, "The Open Window and the Open Door," 35 Cal.L.Rev. 336 (1947).

sions. Thus the granting of collective bargaining rights to public employees involves important matters fundamental to our democratic form of government. The setting of goals and making policy decisions are rights inuring to each citizen. All citizens have the right to associate in groups in order to advocate their special interests to the government. It is something entirely different to grant any one interest group special status and access to the decision-making process. As Professor Summers notes at 1193–94:

> . . . In the private sector the parties may agree at the bargaining table to expand the subjects of bargaining, but a public employee union and a public official do not have the same freedom to agree that certain decisions should be removed from the ordinary political processes and be decided by them in a special forum. The private employer's prerogatives are his to share as he sees fit, but the citizen's right to participate in governmental decisions cannot be bargained away by any public official.

In legal terms the principal question in the private sector is what the *mandatory* subjects of bargaining are, i. e., what decisions the employer *must* share with his employees. The principal question in the public sector is what the *permissible* subjects of bargaining are, i. e., what decisions *may* be made through the specially structured political process.

Viewed in this context, plaintiffs' purported right to associate via collective bargaining must compete with equally, if not more, important rights belonging to the citizenry.

■ The actual decision of how to accommodate public employees in the decision-making process without denying the right of association to others is a legislative decision.[4] Both legally and logically that decision is the prerogative of the legislature, which is much better suited to make it than are the federal courts, whose many duties cannot, under our system of government, include those of legislation. In North Carolina, the legislature has decided to resolve the competing interests by voiding contracts between the state and public employee labor organizations.

■ Plaintiffs also urge that N.C.G. S. § 95–98 violates equal protection and due process. We disagree. While an unwarranted or unjustified interference with a First Amendment right may also be a violation of a Fourteenth Amendment right, McLaughlin v. Tilendis, 398 F.2d 287 (7th Cir. 1968); Shelton v. Tucker, 364 U.S. 479, 81 S.Ct. 247, 5 L. Ed.2d 231 (1960), we have concluded that the statute in question does not violate plaintiffs' right of freedom of association under the First Amendment. From our previous discussion it follows, and we so hold, that plaintiffs' Fourteenth Amendment rights are not violated.

Plaintiffs' request for injunctive and declaratory relief is, therefore, denied.

---

4. The Tenth Amendment of the United States Constitution reserves to the states those powers not delegated to the federal government. The Amendment is a clear expression of the desire that the states would retain their sovereignty within our federal form of government. The decision by the State of North Carolina to void contracts between public employee organizations and governmental units is a matter entrusted to the state's sovereign discretion. See *Atkins*, *supra*, as quoted above. It cannot be emphasized enough that in speaking of a state's sovereignty, the term means more than prerogatives belonging to some inanimate object, rather it signifies the right of the people of a state to govern themselves under the form of government of their choosing. Therefore, since the prospect of public employee collective bargaining impinges upon those rights, it truly is important that the legislature, elected by the people, determine whether to permit such collective bargaining, and if so, on what terms.