Argued and submitted May 16, affirmed November 12, 1986, reconsideration denied
January 16, petition for review denied March 24, 1987 (303 Or 172)

STEVENS et al,
*Respondents,*

*v.*

OREGON PUBLIC EMPLOYEES UNION,
*Petitioner.*

McCANDLISH et al,
*Respondents,*

*v.*

OREGON PUBLIC EMPLOYEES UNION,
*Petitioner.*

CLASSEN et al,
*Respondents,*

*v.*

OREGON PUBLIC EMPLOYEES UNION,
*Petitioner.*

(ERB DA-67-85, DA-72-85, DA-74-85; CA A37531)

728 P2d 70

James S. Coon, Portland, argued the cause for petitioner. With him on the brief was Aitchison, Imperati, Paull, Barnett & Sherwood, P.C., Portland.

No appearance for respondents Ralph C. Stevens and Employees of Vocational Rehabilitation Division.

No appearance for respondents Lori L. McCandlish and Employees of Oregon State Health Division.

No appearance for respondents Jo Ann Classen and Employees of State Board of Pharmacy.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

## WARREN, J.

Petitioner Oregon Public Employees Union (OPEU) seeks review of the Employment Relations Board's (ERB) dismissal of a fair share[1] deauthorization petition pursuant to ORS 183.480. In response to a fair share provision in the most recent public employes' contract, three individuals from three state agencies filed petitions with ERB for deauthorization of the fair share agreement pursuant to ORS 243.650(10). ERB dismissed the petitions, because it concluded that there was no valid fair share agreement and that, therefore, the statutory deauthorization provision does not apply. We affirm.

OPEU is the exclusive collective bargaining representative for many employes of the State of Oregon. State employes are not required to be members of the union, although all state employes in bargaining units represented by OPEU receive the benefits of contracts negotiated by the union. To alleviate the problem of "free-riders" who benefit from union negotiations and activities but are not dues paying members, the union is authorized by statute to negotiate with the employer for a fair share agreement, whereby nonunion members of the bargaining unit make payments to the union in lieu of dues to help cover the cost of services provided by the exclusive representative. If, within 90 days after the collective bargaining contract is executed, 30 percent or more of a bargaining unit's members petition ERB declaring their desire to rescind the fair share agreement, ERB takes a secret vote by the unit's employes and, unless a majority of those voting approve the agreement, ERB certifies deauthorization. ORS 243.650; ORS 243.672.

OPEU and the state negotiated a fair share provision in the 1985-87 agreement. In June and July, 1985, respondents Stevens, McCandlish and Classen filed petitions with ERB for

---

[1] A "fair-share agreement" is defined as

"[A]greement between the public employer and the recognized or certified bargaining representative of public employes whereby employes who are not members of the employe organization are required to make an in-lieu-of-dues payment to an employe organization." ORS 243.650(10).

ORS 243.650(16) defines "payment-in-lieu-of-dues" as

"[A]n assessment to defray the cost for services by the exclusive representative in negotiations and contract administration of all persons in an appropriate bargaining unit who are not members of the organization serving as exclusive representative of the employes. * * *"

deauthorization of the fair share agreement in their respective agencies. OPEU opposed the petitions on the ground that the requisite 30 percent of the bargaining unit had not signed the petitions. ERB dismissed the petitions on its own motion on the ground that there was no valid fair share agreement between OPEU and the state and, therefore, the deauthorization provision in the statute did not apply.

OPEU asserts that ERB erred in considering, on its own motion, the validity of the fair share agreement. The union argues that ERB may only dismiss for the reasons specified by its rules, which provide that a petition may be dismissed if it is not "timely or properly filed." OAR 115-30-000(3)(b). Therefore, they contend ERB has no authority to consider the threshold question of validity of the fair share agreement if it is not raised by one of the parties. We disagree. ERB has the authority, as the agency charged with oversight of public employe collective bargaining, to decide issues preliminary to proper determination of matters before it. *See, e.g.,* ORS 240.086(3); ORS 240.115. Because there would be no reason to decide whether the petitions were timely and properly filed if the fair share agreement they sought to deauthorize was invalid, ERB did not err when it raised on its own motion the validity of the underlying fair share agreement.

On the merits, ERB concluded that the agreement here is not a "fair share" agreement, because the contract provision exempts twelve state agencies of the statewide bargaining unit from application of the provision,[2] whereas,

---

[2] The pertinent sections of Article 10, § 9, of the 1985-87 agreement provide:

"(a) Except for agencies listed in sub (f) of this section of the article, bargaining unit members who are not members of the Union shall either become members of the Union or make payment in lieu of dues to the Union.

"* * * * *

"(f) Fair share shall apply to all employes represented by the Union except those employes in the following Agencies:

"Water Resources, OSCI, OSU, General Services, Veterans' Affairs, MacLaren, Workers' Compensation Department, Agriculture, Western Oregon State College, Forestry, Workers' Compensation Board, Mental Health Division Central Office."

OPEU explains that the twelve state agencies are exempted from the fair share agreement, because in the past those employes had clearly indicated through deauthorization petitions that the majority of their number did not wish to participate in fair share.

by definition, a fair share agreement requires contribution by all nonunion members of the bargaining unit. ORS 243.650(16); *Stines v. OSEA,* 287 Or 643, 601 P2d 799 (1979). Petitioner does not challenge that conclusion.

It contends, however, that, even though the provision is not a valid fair share agreement, it constitutes a valid union security arrangement, because it is not more restrictive than the fair share agreement allowed by law. It argues, first, that the contract provision is actually less restrictive than a fair share agreement and is, therefore, a permissible arrangement under *NLRB v. General Motors Corp.,* 373 US 734, 83 S Ct 1453, 10 L Ed 2d 670 (1963), and *Stines v. OSEA, supra.* It also contends that, even if the agreement is similarly restrictive, the statutorily permitted fair share agreement merely puts an upper limit on union security agreements and so any agreement not more onerous is allowable.

We agree with ERB that the contract provision here provides for the same amount of adherence to the union as a fair share agreement authorized by ORS 243.672(1)(c);[3] indeed, it is a fair share agreement in all respects except that it does not meet the statutory requirement that it apply to all nonunion members of the bargaining unit. For those nonunion members to whom it does apply, however, the effect is the same as fair share: They are not required to join the union but are required to pay money to the union whether they become members of it or not. Thus, the provision is not less restrictive than the arrangement allowed by law, but is identically restrictive.

The union would have us decide whether union security agreements that contain union adherence provisions identical to statutory fair share agreements are permissible. In our view, that analysis misses the point. Here, the union is

---

[3] ORS 243.672(1)(c), provides, in part:

"It is an unfair labor practice for a public employer or its designated representative to do any of the following:

"* * * * *

"(c) Discriminate in regard to hiring, tenure or any terms or condition of employment for the purpose of encouraging or discouraging membership in an employe organization. Nothing in this section is intended to prohibit the entering into of a fair-share agreement between a public employer and the exclusive bargaining representative of its employes."

attempting to include in its contract a fair share provision while failing to comply with the statutory requirements to obtain such an agreement. If the union had chosen a type of union security agreement different from fair share that was less restrictive than fair share, such as maintenance of membership, the provision possibly could be upheld. *Stines v. OSEA, supra.* However, when the agreement the union seeks to enforce is, effectively, fair share, it must meet the requirements of the statute to be valid. Here the agreement does not comply and, therefore, is invalid.

Affirmed.