769 P.2d 76

**LOCAL 2238 OF THE AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, AFL–CIO, Plaintiff–Appellee,**

v.

**The Honorable Hal STRATTON, Attorney General of the State of New Mexico, Defendant–Appellant.**

No. 17537.

Supreme Court of New Mexico.

Feb. 2, 1989.

Hal Stratton, Atty. Gen., Henry M. Bohnhoff, Deputy Atty. Gen., David A. Garcia, James P. Bieg, Terran W. Mast, Asst. Attys. Gen., Santa Fe, Gregory D. Huffaker, Jr., Sp. Asst. Atty. Gen., Albuquerque, for appellant.

Simon & Oppenheimer, Jame Bloom Yohalem, Morton S. Simon, Carol Oppenheimer, Santa Fe, Kirschner, Weinberg & Dempsey, Richard Kirschner, Washington, D.C., for appellee.

Mountain States Legal Foundation, Paul Farley, Denver, Colo., Lossee & Carson, Jerry Losee, Artesia, for amicus curiae.

OPINION

STOWERS, Justice.

Defendant-appellant, the Honorable Hal Stratton, Attorney General of the State of New Mexico, appeals from the judgment of the district court granting partial summary judgment in favor of plaintiff-appellee, Local 2238 of the American Federation of State, County and Municipal Employees, AFL–CIO (AFSCME). The trial court concluded, *inter alia,* that collective bargaining by public employees even without specific legislative authority for the practice is legal in New Mexico. The trial court also granted judgment in favor of appellant finding that one part of the proposed collective bargaining agreement was in violation of the Per Diem and Mileage Act, NMSA 1978, Sections 10–8–1 to –8 (Repl.Pamp. 1987), because the agreement purported to

set rates lower than those provided by statute. No appeal was taken from this portion of the judgment. We affirm the district court.

AFSCME is the duly elected "exclusive representative" of certain employees of the New Mexico State Highway and Transportation Department (Highway Department). In 1972 pursuant to the State Personnel Act, now codified in NMSA 1978, Sections 10-9-1 to -25 (Orig.Pamp. and Repl.Pamp. 1987) (Act), the New Mexico State Personnel Board (Board) promulgated Rules for Labor-Management Relations (RLMR) for purposes of collective bargaining between the "exclusive representative" of the public employees and the state agency. Under Section 8(A) of the RLMR, the attorney general is responsible for reviewing and concurring in any collective bargaining agreement between these two entities.

On May 22, 1987, negotiations on a proposed collective bargaining agreement between AFSCME and the Highway Department were completed and agreed upon by these two parties. The attorney general, by letter dated July 6, 1987, informed the Highway Department that he would not concur in the proposed agreement because "the successor agreement contains numerous provisions that do not comply with statutory law [and] are inconsistent with the [State] Personnel Act * * * and Board rules * * *." As a result of this letter, AFSCME petitioned this court for a writ of mandamus. On July 8, 1987, we denied the writ and stated "collective bargaining is legal in New Mexico even in the absence of a statute addressing the subject." The Board thereupon terminated the then-existing collective bargaining agreement between the Highway Department and its employees.

On July 17, 1987, AFSCME initiated the present action in the district court for writ of certiorari by emergency and permanent relief and complaint for declaratory judgment to review the Board's decision denying a joint request by AFSCME and the Highway Department to extend the existing collective bargaining agreement and to find invalid the attorney general's legal objections of the successor collective bargaining agreement between them. The district court quashed the writ. Since no genuine issues of material facts existed, both parties moved for summary judgment as a matter of law in the declaratory judgment action.

From the granting of summary judgment in favor of AFSCME, appellant raises the following issues: (1) whether state agencies have a mandatory duty to recognize any union as the exclusive bargaining representative of its employees, or to bargain with it; (2) whether the legislature has delegated its exclusive authority to make law concerning collective bargaining; and (3) whether the collective bargaining agreement conflicts with both the RLMR and the State Personnel Act and is therefore void. The issue dispositive of this appeal is whether collective bargaining by public employees in New Mexico is legal even without a statute explicitly addressing that subject.

1. *History of Collective Bargaining in New Mexico.*

The leading case in New Mexico on collective bargaining is *International Brotherhood of Electrical Workers, Local 611 v. Town of Farmington,* 75 N.M. 393, 405 P.2d 233 (1965) (*Farmington*). In that case this court held that a municipality had implied statutory authority to enter into a collective bargaining agreement with the union representing the public employees on those areas not otherwise covered by a state merit system. The issue raised therein was whether the town of Farmington could be a party to a collective bargaining agreement with a union representing electrical workers at an electrical utility acquired by the town from private owners. The workers were unionized at the time of the town's acquisition of the electrical company in 1959 and continued to operate under the collective bargaining agreement with the union until 1962. At that time, a new collective bargaining agreement was entered into, which the union sought to modify. The union thereafter brought a declaratory judgment action to clarify the town's power and authority to enter into

any such agreement. *Id.* at 394, 405 P.2d at 234. The district judge ruled that the town had such authority and the town appealed.

In our analysis of that case we recognized that, absent legislative authority, courts in a majority of jurisdictions generally have viewed collective bargaining agreements between government management and public employees as invalid. *Id.; see also* Annotation, *Union Organization and Activities of Public Employees,* 31 A.L.R.2d 1142 (1953). The reasons principally advanced for denying the right of public employees to engage in collective bargaining include "the sovereignty of the public employer; the fact that the government is established and operated for all the people and not for the benefit of any person or group; that it is not operated for profit; that public employees owe undivided allegiance to the public employer; and, that continued and uninterrupted operation of public employment is indispensable in the public interest." *Farmington,* 75 N.M. at 394–95, 405 P.2d at 235. This court further stated in *Farmington:*

> that any statutory regulation of employment negates the view that there could be contractual negotiations between the governmental employer and the employee. If a merit system provides for those matters usually contained in a collective bargaining agreement, both could not exist concurrently, and the inconsistency must be resolved in favor of the statute or municipal ordinance, and the authority to enter into a legally binding collective bargaining agreement should properly be denied.

*Id.* at 396, 405 P.2d at 236 (citations omitted).

However, in *Farmington,* because the legislature merely had authorized municipalities to adopt a merit system and the town had not yet effectuated such a system, this court held there existed no statutory authority to conflict with the collective bargaining agreement. And since the legislature authorized a merit system, it was apparent that the legislature contemplated employment contracts between municipalities and employees. This court said, "While collective bargaining contracts are not specifically mentioned in the statute [authorizing a merit system], such agreements would certainly be within the language." *Id.* at 397, 405 P.2d at 236.

Although *Farmington* narrowed its holding to the fact that the town was functioning in a proprietary capacity in operating an electrical utility, we believe that *Farmington* provides the authority for a governmental employer to bargain collectively with its employees, *unless such bargaining is inconsistent with an existing statutory or state, county or municipal merit system or with one which will come into existence. Id.* at 396, 405 P.2d at 237; *see also Local 266, Int'l Bhd. of Elec. Workers v. Salt River Project Agric. Improvement & Power Dist.,* 78 Ariz. 30, 275 P.2d 393 (1954) (the district, a political subdivision of the state, had the power implied from the authorization to do business to enter into a collective bargaining agreement with its employees in the absence of express statutory provisions); *accord Christie v. Port of Olympia,* 27 Wash.2d 534, 179 P.2d 294 (1947) (en banc) (the state's power to employ includes the doctrine of implied powers).

Prior to our decision in *Farmington,* the attorney general's office in New Mexico had ruled that in the absence of specific legislative authority for a public employer to engage in collective bargaining, a public employer might negotiate with a union regarding rules and regulations for employees but the public employer had to retain the right to alter any such rules. AG Op. No. 63–52 (1963). On the basis of our decision in *Farmington,* the attorney general in 1969 ruled that implied legislative authority for collective bargaining existed for matters outside the scope of an established municipal merit system. AG Op. No. 69–73 (1969). In 1971 the attorney general reiterated the view that *Farmington* authorized municipal collective bargaining if no merit system was in effect, or if it was in effect, authorized collective bargaining in areas outside the merit system. AG Op. No. 71–96 (1971). That opinion also stated, in the absence of a statutory bar, a public

employees' union might collect union fees through a voluntary payroll check off. Then, the state district court in *American Federation of State, County and Municipal Employees, Local 2183 v. New Mexico State Personnel Board*, 81 L.R.R.M. (BNA) 2397 (1972), held that state employees were permitted to join unions and bargain collectively. And, in *City of Albuquerque v. Campos*, 86 N.M. 488, 493, 525 P.2d 848, 853 (1974), we averred that public employees do not have a right to engage in work stoppages and strikes under statutes that allow strikes and picketing for permissible purposes (new codified in NMSA 1978, Sections 50–2–1 to –4 and 50–3–1 to –2 (Repl.Pamp.1988)), notwithstanding that those statutes do not expressly exempt public employees. In 1975 the attorney general ruled that public employees subject to the State Personnel Act could not, in the course of collective bargaining, implement a "closed shop" or an "agency shop" because Board rules prohibited such an arrangement. AG Op. No. 75–66 (1975). In distinguishing employees subject to the State Personnel Act from those employed in institutes of higher learning, whose right to a closed shop had been approved in AG Opinion Number 74–3 (1974), the 1975 AG opinion concluded that the statute giving employees the fullest choice in their labor relations, now codified at NMSA 1978, Section 59–2–1, did not apply to public sector collective bargaining agreements; a conclusion related to the *City of Albuquerque* case. In sum, the attorney general's position, after our decision in *Farmington*, was that authority for collective bargaining agreements could be implied from the legislature's grant of authority to a municipality to establish a merit system for personnel management for any subjects not expressly permitted within the scope of a statutory merit system.

As of 1965 the legislature permitted municipalities to bargain with municipal transit workers. In response to the Urban Mass Transportation Act of 1964, 49 U.S.C. App. Sections 1601 to 1618 (1976), which requires states to allow mass transit workers to engage in collective bargaining with cities as a precondition to qualifying for federal mass transit funds, the New Mexico legislature passed statutes that expressly authorized cities to engage in collective bargaining with city transit employees (now codified in NMSA 1978, Sections 3–52–14 to –16 (Repl.Pamp.1984)). The other reference to collective bargaining in New Mexico's statutory law is in the Open Meetings Act, NMSA 1978, Sections 10–15–1 to –4 (Repl.Pamp.1987). The Act applies to all state agencies and requires that meetings of a quorum of the policy-making body of any such agencies be open to the public. § 10–15–1(B). Specifically excepted from this requirement are "meetings for the discussion of bargaining strategy preliminary to collective bargaining negotiations between the policy-making body and a bargaining unit representing the employees of that policy-making body and a collective bargaining unit sessions at which the policy-making body and the representatives of the collective bargaining unit are present." § 10–15–1(E)(3). By providing for this exception to the Open Meetings Act for collective bargaining, the legislature evidenced again its knowledge that, in addition to municipalities, state agencies were engaged in collective bargaining.

Since 1963 a number of bills explicitly authorizing collective bargaining in the public sector were introduced and rejected by the New Mexico legislature. Each of these bills provided for the recognition of *existing* bargaining units a fact that leads to the obvious conclusion that the legislature was aware of *collective bargaining between public agencies and public employees*. Such legislative inaction can be attributed to satisfaction with the status quo and the acknowledgment that legislation was unnecessary to allow bargaining. *See Local 598, Council 58 Am. Fed'n v. City of Huntington*, 317 S.E.2d 167 (W.Va. 1984) (failure to pass law allowing collective bargaining, no indication legislature intended not to allow such practice to develop). In addition a bill expressly designed to prohibit public employees from bargaining collectively never was enacted into law. H.R. 243, 31st leg., 1st Sess. (1973). Moreover, since approximately

1972, when the Board promulgated its own rules (RLMR) authorizing collective bargaining, the legislature has been aware of bargaining occurring under the aegis of the Board. It never directed the Board to refrain from doing so.

Thus, it is quite apparent that the legislature has recognized and condoned collective bargaining without taking the positive step of official recognition. It has "de facto" recognized collective bargaining in the public sector.

### 2. *Express Statutory Authority/Implied Authority for Collective Bargaining.*

The rule is well-settled among a majority of jurisdictions throughout the United States that *absent express statutory authority, public officials or state agencies do not have the authority to enter into collective bargaining agreements with public employees.* See, e.g., *Nichols v. Bolding,* 291 Ala. 50, 277 So.2d 868 (1973); *Alaska Pub. Employees Ass'n v. Municipality of Anchorage,* 555 P.2d 552 (Alaska 1976); *AFSCME, Local 119 v. County of Los Angeles,* 49 Cal.App.3d 356, 122 Cal. Rptr. 591 (1975); *State v. AFSCME, Local 1726,* 298 A.2d 362 (Del.Ch.1972); *Miami Water Works No. 654 v. City of Miami,* 157 Fla. 445, 26 So.2d 194 (1946) (en banc); *Chatham Ass'n of Educators v. Board of Pub. Educ.,* 231 Ga. 806, 204 S.E.2d 138 (1974); *Board of Educ. v. Hawaii Pub. Employment Relations Bd.,* 56 Haw. 85, 528 P.2d 809 (1974) (per curiam); *Local Union 283, Int'l Bhd. of Elec. Workers v. Robison,* 91 Idaho 445, 423 P.2d 999 (1967); *State Bd. of Regents v. United Packing House Food and Allied Workers Local No. 1258,* 175 N.W.2d 110 (Iowa 1970); *Wichita Pub. Schools Employees Union, Local No. 513 v. Smith,* 194 Kan. 2, 397 P.2d 357 (1964); *Board of Trustees v. Public Employees Council No. 51, AFSCME,* 571 S.W.2d 616 (Ky.1978); *School Comm. v. Easton Teachers Ass'n,* 398 A.2d 1220 (Me.1979) (per curiam); *Mugford v. Mayor of Baltimore,* 185 Md. 266, 44 A.2d 745 (1945); *Massachusetts Bay Transp. Auth. v. Labor Relations Comm'n,* 356 Mass. 563, 254 N.E.2d 404 (1970); *Ottawa County v. Jaklinski,* 423 Mich. 1, 377 N.W.2d 668 (1985); *Minneapolis Fed'n of Teachers, Local 59 v. Obermeyer,* 275 Minn. 347, 147 N.W.2d 358 (1966); *City of Springfield v. Clouse,* 356 Mo. 1239, 206 S.W.2d 539 (1947) (en banc); *Zderick v. Silver Bow County,* 154 Mont. 118, 460 P.2d 749 (1969); *University Police Officers Union, Local 567 v. University of Neb.,* 203 Neb. 4, 277 N.W.2d 529 (1979); *City of Manchester v. Manchester Teachers Guild,* 100 N.H. 507, 131 A.2d 59 (1957); *Delaware River and Bay Auth. v. International Org. of Masters, Mates & Pilots,* 45 N.J. 138, 211 A.2d 789 (1965); *Winston–Salem/Forsyth County Unit of N.C. Ass'n of Educators v. Phillips,* 381 F.Supp. 644 (M.D.N.C.1974); *AFSCME, Council No. 95 v. Olson,* 338 N.W.2d 97 (N.D.1983); *State ex rel. Ohio Council 8, AFSCME v. Spellacy,* 17 Ohio St.3d 112, 478 N.E.2d 229 (1985); *Stevens v. Oregon Pub. Employees Union,* 82 Or.App. 264, 728 P.2d 70 (1986), *review denied,* 303 Or. 172, 734 P.2d 1364 (1987); *Philadelphia Teachers' Ass'n v. Labrum,* 415 Pa. 212, 203 A.2d 34 (1964); *City of Pawtucket v. Pawtucket Teachers' Alliance Local 930,* 87 R.I. 364, 141 A.2d 624 (1958); *Levasseur v. Wheeldon,* 79 S.D. 442, 112 N.W.2d 894 (1962); *Fulenwider v. Firefighters Ass'n Local Union 1784,* 649 S.W.2d 268 (Tenn.1982); *C.I.O. v. City of Dallas,* 198 S.W.2d 143 (Tex.Civ.App.1946); *Pratt v. City Council of Riverton,* 639 P.2d 172 (Utah 1981); *Commonwealth v. County Bd.,* 217 Va. 558, 232 S.E.2d 30 (1977); *International Ass'n of Firefighters, Local No. 1052 v. Public Employment Relations Comm'n,* 45 Wash.App. 686, 726 P.2d 1260 (1986); *Brown County v. Wisconsin Employment Relations Comm'n,* 138 Wis.2d 254, 405 N.W.2d 752 (Ct.App.), *review denied,* 140 Wis.2d 873, 416 N.W.2d 66 (1987); *Retail Clerks Local 187 v. University of Wyo.,* 531 P.2d 884 (Wyo.1975).

A minority of jurisdictions modified the common-law rule to require *less* specific legislative authority before collective bargaining is permitted. See, e.g., *Board of Educ. v. Scottsdale Educ. Ass'n,* 17 Ariz. App. 504, 498 P.2d 578 (1972), *vacated on other grounds,* 109 Ariz. 342, 509 P.2d 612 (1973); *City of Fort Smith v. Arkansas*

*State Council No. 38, AFSCME,* 245 Ark. 409, 433 S.W.2d 153 (1968); *Littleton Educ. Ass'n v. Arapahoe County School Dist., No. 6,* 191 Colo. 411, 553 P.2d 793 (1976) (en banc); *Norwalk Teachers' Ass'n. v. Board of Educ.,* 138 Conn. 269, 83 A.2d 482 (1951); *Gary Teachers Union, Local No. 4, AFT v. School City of Gary,* 152 Ind.App. 591, 284 N.E.2d 108 (1972); *Beauboeuf v. Delgado College,* 303 F.Supp. 861 (E.D.La.1969), *aff'd,* 428 F.2d 470 (5th Cir. 1970). *See also Dayton Classroom Teachers Ass'n v. Dayton Bd. of Educ.,* 41 Ohio St.2d 127, 323 N.E.2d 714 (1975) (statutory authority broad enough from which to infer power to bargain collectively; but in 1984 Ohio General Assembly enacted Public Employees Collective Bargaining Act anyway); *Local 598, Council 58 Am. Fed'n. v. City of Huntington,* 317 S.E.2d 167 (W.Va.1984) (based on general authority to contract). And in one state, Illinois, collective bargaining, in the absence of statutory authority, has been declared to be neither barred as against public policy nor required of all public employees. *Chicago Div. of Ill. Educ. Ass'n v. Board of Educ.,* 76 Ill. App.2d 456, 222 N.E.2d 243 (1966) (the board of education does not need legislative authority to enter into a collective bargaining agreement with a sole collective bargaining agency selected by its teachers, and that agreement is not against public policy).

The position espoused by a minority of the jurisdictions is that in the absence of express statutory authority to bargain collectively a *general grant of power may imply the necessary means for carrying into execution the power granted. See* Dole, Jr., *State and Local Public Employee Collective Bargaining in the Absence of Explicit Legislative Authorization,* 54 Iowa L.Rev. 539 (1969); *see also County Bd.,* 217 Va. at 562, 232 S.E.2d at 33; *Olson,* 338 N.W.2d at 100. Accordingly, if a power is granted expressly to a public body to do a certain act, but no specific mode or manner of exercising the power is prescribed, the public body in its discretion may chose a reasonable method to exercise the power expressly granted. *County Bd.,* 217 Va. at 562, 232 S.E.2d at 33. For example, if the power to bargain collectively has not been granted to the state agencies, but instead, the power to contract has, then the means to bargain collectively may be implied from the general power to contract in order to exercise that power effectively.

Turning to the dispositive question in the instant case, we are aware that collective bargaining in the public sector has been in existence in New Mexico for approximately seventeen years without an express grant of legislative authority. Thus, the challenge by the attorney general to its existence was not inappropriate. But we are also compelled to look at this issue realistically, and are mindful that we cannot, without grave injustice and harm, turn back the hands of time. Therefore for us to conclude that the existence of collective bargaining in the public sector is legal in New Mexico, we must find support for our position in the minority viewpoint.

The legislature has in the State Personnel Act established an effective system of state personnel administration based solely on qualifications and ability. The purpose of the Personnel Act is "to establish * * * a system of personnel administration based solely on qualification and ability, which will provide greater economy and efficiency in the management of state affairs." § 10-9-2. Under the Act, the Board has a duty to promulgate rules and regulations to effectuate its purpose. § 10-9-10(A). The rules adopted, however, may not abridge any right or duty imposed by the Act. *State ex rel. McCulloch v. Ashby,* 73 N.M. 267, 271, 387 P.2d 588, 590 (1963). Ultimate decision-making authority regarding employment terms remains exclusively within the Board. *See* § 10-9-13.

■ The legislature has given the Board broad authority to set state employment policies. *See* § 10-9-2. "Broad standards are permissible so long as they are capable of reasonable application and are sufficient to limit and define the agency's discretionary powers." *State v. Pina,* 90 N.M. 181, 186, 561 P.2d 43, 48 (Ct.App.1977); *see also City of Santa Fe v. Gamble-Skogmo, Inc.,* 73 N.M. 410, 417, 389 P.2d 13, 18 (1964).

The rules (RLMR) promulgated by the Board must provide, "among other things", for: a classification plan for all positions; a pay plan; tests; employment lists; hours of work, holiday and leave; dismissal or demotion procedures; and a probation period of one year for new employees. § 10–9–13. Since the Board has the authority to promulgate reasonable regulations for the conduct of employee-management relations, "among other things" is sufficiently broad to include the authority to allow collective bargaining by the state agencies and its employees if such a method is a reasonable mode of exercising the general grant of power prescribed in the Act and the method does not conflict with subjects expressly covered in the Act, existing legislation and public policy. Although the Board is constrained from delegating to individual state agencies and public employee unions the authority to enact rules or agreements on those matters expressly placed within the purview of the Board's rule-making authority, *i.e.*, wages, hiring, termination of employment, and other areas, the Board is not constrained from prohibiting the state agencies and unions to effectuate agreements on terms and conditions of employment not inconsistent with the Personnel Act and with the Board's rules (RLMR). In stating the above, we are mindful of the Attorney General's Opinion No. 87–41 (1987) in which the attorney general concluded that it is not legal in New Mexico for state agencies to engage in collective bargaining with their employees and that the RLMR are not authorized under New Mexico law. We do not agree with this opinion. It is not in line with our case law and prior attorney general's opinions.

The Board by way of the Act has been given the authority to issue the RLMR. The purpose of the rules, as set forth in Section 1 of the RLMR, is to promote the improvement of labor-management relations by providing a uniform basis for implementing the right of employees to union representation or be represented by such labor organizations for the purpose of collective bargaining. Section 2(C) defines collective bargaining as the "performance of the mutual obligation of an agency and the exclusive representative to meet * * * and confer in good faith with respect to the terms and conditions of employment" but without compelling "either party to agree to a proposal or require the making of a concession." Section 3 confers upon employees the right to join labor organizations to engage in lawful collective bargaining free from interference, and guarantees the right of an employee to refrain from such activities. The next three sections, detail the procedures for establishing appropriate labor organizations for exclusive representation. Section 7 describes the scope of negotiations including the following: the agency and the representative must meet and negotiate in good faith, but neither are compelled to enter into any agreement; excluded from negotiations are matters of classification, reclassification, retirement benefits and salaries, and also all agreements on subjects inconsistent with the intent of any rule of the Board; agreements are limited in duration to no more than three years; agreements may contain grievance and impasse resolution procedures; agreements may provide for payroll deductions for union fees but cannot require an employee to join or remain a member of a labor organization; and, agreements may not obligate the agency to commit funds for purposes for which they have not been lawfully appropriated. Section 8 requires ratification of a collective bargaining agreement by the employees and agency concurrence by the Department of Finance and Administration, and the attorney general, and approval by the Board. It further provides that, in the administration of matters covered by the agreement, the parties are governed by existing or future laws, rules, and written agency policies; but that later-effectuated agency policies may not conflict with specific provisions of the agreements unless required by law, rules or regulations. Any collective bargaining agreements between a state agency and labor union are subject at all times to abrogation by the legislature and the Personnel Board. Section 9 sets out a procedure for the resolution of impasses. Section 10 sets out a grievance and arbitration

procedure; it allows review of the arbitrator's award by the Board. Section 11 deals with prohibited practices and the prevention of such practices. Specifically, it prohibits employers and employees from interfering, coercing, disciplining and discriminating against for labor organization reasons, and for refusing to bargain in good faith. Section 13 prohibits strikes and lockouts. Section 14 recognizes existing appropriate labor units and collective bargaining agreements. Finally, Section 16 sets forth a procedure to revise these rules.

We conclude that the legislature by its various actions has conferred upon the Board by implication the power to bargain collectively. The RLMR provides a system for coordinating collective bargaining between a state agency and its employees should the agency so consent. Rather than allowing each agency to negotiate with its employees on its own terms, the Board has created a framework in these rules for uniform negotiations within which collective bargaining may be carried out. The authority to enter into collective bargaining is implied as an incident to the express legislative grant of authority in the Act, namely, to promulgate regulations to provide "greater economy and efficiency in the management of state affairs". The rules promulgated are a proper exercise of that authority and operate fairly within the limits of that authority. Thus, the rules do not constitute an improper delegation of legislative authority. It is the Board that has been given the authority to administer the Act through the adoption of such regulations. And the Board at all times retains the power to disapprove collective bargaining agreements between the agencies and their employees. No terms of employment, therefore, can become effective until the Board approves them.

■ We cannot say there was any improper delegation of a public duty by the Board, as long as the Board has ultimate discretion and control over any collective bargaining between a state agency and the union representing its employees. If the Board determines in its discretion that implementation of collective bargaining will

more efficiently and effectively accomplish its objectives and purposes, it can select means to carry out its duties and responsibilities incidental to the sound development of employer-employee relations. The legislature may lawfully delegate substantial discretion to administrative agencies so long as the legislature "has declared the policy and established primary standards to which the agencies must conform." *State Park and Recreation Comm'n v. New Mexico State Auth.*, 76 N.M. 1, 13, 411 P.2d 984, 993 (1966).

3. *The Authority to Bargain Collectively is Consistent with Existing Statutes and Public Policy.*

■ Collective bargaining is consistent with the Act. The rules promulgated by the Board expressly provide that collective bargaining agreements cannot conflict with the Act. The Act always remains supreme to any collective bargaining agreement. Fail-safe provisions have been incorporated in these rules to prevent any conflicts between collective bargaining agreements and the Act. The rules prohibit the parties from negotiating or entering into agreements concerning subjects governed by the Act. RLMR § 7(B). Furthermore, the rules provide that the Board shall not enforce any agreements which conflict with the Act. RMLR § 10(G)(5).

As practiced in New Mexico, collective bargaining under the RLMR is not the same as in the private sector. The scope of bargaining permitted is extremely narrow and *wages* are "among other things" never a subject of negotiation. A reading of Section 7(B) states that excluded from the scope of bargaining are matters of classification, retirement benefits and salaries. Nor has collective bargaining been found to be incompatible with a merit system. Both have existed together in New Mexico for over a period of seventeen years.

There is also no conflict between the RLMR and NMSA 1978, Section 10-9-7. That section provides as follows:

The state personnel office shall not spend any of its appropriations for the promulgating or filing of rules, policies or plans which would have significant

financial impact or which would require significant future appropriations to maintain without prior, specific legislative approval.

Section 7(G) of the RLMR contains a specific provision prohibiting any violation of Section 10–9–7.

> Agreements may not obligate the agency to commit funds for purposes for which funds have not been lawfully appropriated provided, however, this provision shall not be considered violated solely because future appropriations may be necessary to fund such purposes; provided further that any such purposes for which future appropriations are necessary shall not be implemented unless funds are appropriated for such purposes.

Collective bargaining agreements entered into can only commit funds for purposes for which they have been appropriated and, therefore, there would be "prior, specific legislative approval." It is also clear that since agreements cannot commit future appropriations, the section can never be violated on that ground either. The rules fully protect the legislature's appropriations power.

### 4. *Conclusion*

We hold that in New Mexico, there is an implied authority to bargain collectively in the public sector as an incident to the express grant of authority under the Personnel Act. We further hold that collective bargaining contracts with governmental employees cannot in any way conflict with, contradict, expand or enlarge the Rules for Labor–Management Relations adopted by the State Personnel Board or any other governmental entity acting in this regard. The same applies to any merit system in place or to be adopted in the future. For the above stated reasons, we affirm the judgment of the district court.

IT IS SO ORDERED.

SCARBOROUGH and RANSOM, JJ., concur.