806 P.2d 572

**LOCAL 2839 OF AMERICAN FEDERA-TION OF STATE, COUNTY AND MU-NICIPAL EMPLOYEES, AFL–CIO. Plaintiff–Appellee,**

v.

**Honorable Tom UDALL, Attorney General of the State of New Mexico, Defendant–Appellant.**

No. 18791.

Supreme Court of New Mexico.

Feb. 19, 1991.

Tom Udall, Atty. Gen., Charles R. Peifer, Chief Asst. Atty. Gen., Terran W. Mast, Asst. Atty. Gen., Santa Fe, for defendant-appellant.

Simon & Oppenheimer, Morton S. Simon, Carol Oppenheimer, Jane Bloom Yohalem, Santa Fe, for plaintiff-appellee.

## OPINION

SOSA, Chief Justice.

The Human Services Department (the department) and its local bargaining unit, Local 2839 (the Local), presented a collective bargaining agreement (the agreement) to the State Personnel Board (the board) for the board's approval. The board approved the agreement. Pursuant to Section 8(A)[1] of its Rules for Labor–Management Relations (RLMR), the board submitted the agreement to the attorney general. In a letter to the department's secretary, the attorney general's office disapproved of the agreement, contending that in twenty-seven specific respects the agreement was violative of state law as enunciated in (1) this court's opinion in *Local 2238 of the American Federation of State, County and Municipal Employees, AFL–CIO v. Stratton,* 108 N.M. 163, 769 P.2d 76 (1989), (2) NMSA 1978, Sections 10–9–1 to –25 (Repl.Pamp.1990) ("the Personnel Act"), and (3) the RLMR.

## PROCEDURAL CONTEXT

In response to the attorney general's rejection of the agreement, Local 2839 filed an action for declaratory judgment in district court, naming the department and the

---

1.  Section 8(A) provides:
    Any collective bargaining agreement reached between the agency and the exclusive representative shall be subject to ratification by the employees in the appropriate unit and the agency, concurrence by the Department of Finance and Administration and the Attorney General, and approval by the board.

attorney general as defendants, and seeking a declaration that the agreement was valid in its entirety. Both parties filed motions for summary judgment. The court granted the Local's motion and denied the attorney general's motion. The court's judgment was based on two grounds: (1) collateral estoppel of the attorney general's defense to the Local's action; and (2), in the alternative, a finding that the twenty-seven challenged provisions of the agreement did not "violate or conflict with the State Personnel Act ..., the Personnel Board Rules, or the [RLMR]."

Insofar as collateral estoppel is concerned, the court found, in pertinent part, that:

—in *Local 2238*, both the district and supreme courts "actually and necessarily decided that the challenged provisions" of the collective bargaining agreement at issue in that case—involving the state highway department—"were legally sufficient and did not violate the Personnel Act * * *, the Personnel Board Rules or the [RLMR];"

—the twenty-seven provisions challenged by the attorney general in the case at bar were "strikingly similar, if not identical, to the contract provisions determined" to be "legally sufficient" by the district and supreme courts in *Local 2238;*

—the ultimate facts and issues to be decided in *Local 2238* and the case at bar are identical;

—"the identity or privity of the Plaintiff" in *Local 2238* and the case at bar "is unimportant as a matter of New Mexico law" (citing *Silva v. State,* 106 N.M. 472, 745 P.2d 380 (1987));

—because the department's "ultimate interest" in the case at bar is identical to the Local's "there is identity of privity which meets due process requirements between" defendant in *Local 2238* and defendant in the case at bar;

—the attorney general, defendant in both cases, "had a full and fair opportunity for judicial resolution of the issues raised in" *Local 2238.*

As to the issue of the legal sufficiency of the twenty-seven challenged provisions of the agreement, the district court merely ruled that consistent with *Local 2238,* the provisions "do not violate or conflict with the State Personnel Act * * *, the Personnel Board Rules, or the [RLMR]."

At the hearing on the motions, the Local had sought injunctive relief, which the court granted, in part, to the effect that the department was enjoined pending appeal "from failing to immediately implement" the terms of the agreement. The court ruled that, pursuant to SCRA 1986, 1–062, there would be no stay.

## ISSUES RAISED ON APPEAL

On appeal, the attorney general asserts three errors: (1) the district court erred in finding that none of the challenged twenty-seven provisions conflict with applicable law; (2) the court erred in finding that the attorney general was collaterally estopped to defend the action; and (3) the court erred in granting injunctive relief. As to the third issue, the attorney general contends that if he was right as to even one of the twenty-seven challenged provisions, the injunction should be dissolved until the agreement is amended to conform to law.

The Local argues that the doctrine of collateral estoppel barred the attorney general from contesting the Local's action. However, the Local argues, even if we do not agree with the district court's ruling on collateral estoppel, we should nonetheless agree with the district court that the challenged provisions of the agreement do not violate the Personnel Act, the Personnel Board Rules or the RLMR and thus affirm the judgment.

### (a) *The attorney general's argument as to legal sufficiency*

Insofar as the legal sufficiency of the twenty-seven challenged provisions of the agreement is concerned, the attorney general, among other objections, contends as follows:

(1) the agreement contains provisions pertaining to salary, compensation and classification of employees in violation of

RLMR 7(B), which provides that "matters of salary" and "matters of classification" are to be excluded from collective bargaining negotiations;

(2) the agreement provides for the unlawful appropriation of money, including the establishment of a $20,000 counseling program that the legislature refused to fund, in violation of RLMR 7(G), which prohibits collective bargaining agreements from obligating state agencies to commit funds for purposes "for which funds have not been lawfully appropriated;"

(3) the agreement unlawfully expands the scope of collective bargaining agreements by requiring the parties to challenge disputed provisions of the agreement in the courts, when *Local 2238* provides that such a collective bargaining agreement must be controlled by the Personnel Act, the board's rules, and any legislative changes;

(4) the agreement impermissibly defines management employees in such a way as to include them in the bargaining unit, when RLMR 5(F)(2) excludes management employees from bargaining units;

(5) the agreement's leave provisions clash with board rules 13.3(B) and (C) pertaining to the rights of an employee who takes leave to return to the same geographical location in which the employee lived before the leave;

In general, the attorney general finds in the challenged provisions a blanket violation of the principle we enunciated in *Local 2238*, to the effect that the board may not delegate to state agencies or employee unions the authority "to enact rules or agreements on those matters expressly placed within the purview of the Board's rule-making authority, *i.e.,* wages, hiring, termination of employment * * *." 108 N.M. at 169, 769 P.2d at 82.

(b) *The attorney general's argument as to collateral estoppel*

Insofar as the court's ruling on collateral estoppel is concerned, the attorney general

argues that the court erred in concluding that the district and supreme courts actually and necessarily determined the legal sufficiency of the twenty-seven challenged provisions in *Local 2238*. The attorney general contends that only three of the twenty-seven provisions now before the court are similar to provisions of the highway department agreement challenged in *Local 2238*.

Further, the attorney general argues, in our decision in *Local 2238*, we did not rule on the legal sufficiency of the provisions challenged in that case. Thus, there was no "actual and necessary" ruling on that issue that can now serve as the predicate for a finding of collateral estoppel. Because we did not issue a holding on legal sufficiency in the case on appeal, any ruling by the lower court on legal sufficiency cannot be conclusive in the case at bar.

(c) *The attorney general's argument as to injunctive relief*

Because the court premised its grant of injunction on the conclusion that "[i]t is likely that [the Local] will succeed on the merits on appeal," and because, the attorney general argues, this conclusion was erroneous, the injunction should be dissolved and the Local should be required to conform the agreement with applicable law as construed by the attorney general.

(d) *The Local's argument as to collateral estoppel*

The Local contends that we need not reach the argument on the legal sufficiency of the challenged provisions, because the court correctly applied the principles of collateral estoppel to the attorney general's attempted defense of the presentation action. The Local relies on several of our prior decisions [2] to argue that collateral estoppel applies when the same issue is litigated in both actions, the issue is actually, finally and necessarily decided in the first action, the party against whom estoppel is asserted is either identical to or in

2. *E.g. International Paper Co. v. Farrar*, 102 N.M. 739, 700 P.2d 642 (1985); *Torres v. Village*

*of Capitan,* 92 N.M. 64, 582 P.2d 1277 (1978).

privity with the original party against whom the issue was previously decided, and that original party had a full and fair opportunity to contest the issue in the first action.

The Local argues that the court in *Local 2238* actually and necessarily decided that the provisions of the agreement challenged in that case were legally sufficient. The Local points to language in the court's order granting summary judgment to the plaintiff-local in that case wherein the court ruled: "The proposed collective bargaining agreement does not violate the State Personnel Act, the Rules and Regulations of the State Personnel Board, nor the RLMR." (*Local 2238*, No. SF–87–1490(C), December 28, 1987.) The Local argues in addition that, for purposes of collateral estoppel, the provisions challenged in *Local 2238* and those challenged here are indistinguishable. For example, the Local points to salary provisions in the agreements at issue in each case, provisions relating to future legislative appropriations, and provisions relating to leave, to argue that the same or sufficiently similar issues were conclusively decided in each case.

### (e) *The Local's argument as to legal sufficiency*

The Local argues that, should we find the trial court erred on the question of collateral estoppel, we should nonetheless affirm the trial court's judgment as premised on the alternative basis for relief, namely, that the agreement does not violate the Personnel Act, board rules, or the RLMR. Because the board found that the agreement did not violate its own rules, the Local argues, we should give great deference to the board's determination.

Yet, even if we do not accept the board's finding, the Local contends, by our own examination of the agreement we should find the agreement to be legally sufficient. The Local argues that provisions in the agreement pertaining to salary in actuality concern benefits or collateral compensation not excluded by the board's rules from allowable subject matter for collective-bargaining negotiation. As for the agreement's provisions pertaining to future appropriations, the Local points to RLMR 7(G) and our reading of that rule in *Local 2238*, where we said it is clear that collective bargaining agreements "cannot commit future appropriations, [and thus rule 7(G) ] can never be violated" on the ground that an agreement seeks to commit funds for purposes other than those for which the legislature has appropriated the funds. 108 N.M. at 171, 769 P.2d at 84.

The Local challenges the attorney general's contention that disputes over the agreement must be litigated, pointing to Article 27, Section 3(b) of the agreement, which provides that "[t]he Department and the Union are governed by existing or future laws and the regulations of the appropriate authorities, including State Personnel Board rules and regulations * * *." Nor, in the Local's judgment, does the agreement expand the permissible scope of collective bargaining by including management employees in the bargaining unit. Article 1, Section 5 of the agreement, in the Local's estimation, properly excludes management personnel from the bargaining unit. That section states, " 'Management' is the Secretary of the Department and all department officials, supervisors, and other representatives of management who have been excluded from the appropriate collective bargaining unit."

Finally, the Local contends that the agreement's provisions concerning leave do not conflict with the Personnel Act or board rules. In general, the Local argues that the agreement does not violate the principle discussed in *Local 2238* to the effect that the board may not delegate to state agencies or employee unions the authority "to enact rules or agreements on those matters expressly placed within the purview of the Board's rule-making authority, *i.e.*, wages, hiring, termination of employment * * *." 108 N.M. at 169, 769 P.2d at 82.

The Local construes the attorney general's challenge to the agreement as a means by which the attorney general seeks to achieve indirectly what he has not otherwise been able to achieve directly, namely,

a thwarting of the collective-bargaining process in New Mexico as undertaken by public employees.

## OUR HOLDING ON APPEAL, DISCUSSION OF LEGAL ISSUES

On appeal, we affirm the district court's ruling on the grounds of collateral estoppel. Thus, we need not reach the other issues raised by the parties on appeal. The district court correctly denied a stay.

By the doctrine of offensive collateral estoppel, discussed more fully below, the attorney general was barred from raising as defenses to this action essentially the same defenses to essentially the same substantive contract provisions he raised at the district court level in *Local 2238*, 108 N.M. 163, 769 P.2d 76. We agree entirely with Judge Herrera, the trial judge in the case before us, that Judge Encinias, in his ruling in *Local 2238*, "actually and necessarily decided the challenged provisions" in that case. We likewise agree with Judge Herrera that the provisions challenged in the case at bar are "strikingly similar, if not identical, to the contract provisions determined [to be] legally sufficient" by Judge Encinias.

In both cases the attorney general contended that certain compensation and benefit provisions in the respective contracts constituted a violation of RLMR 7(B). Although there are slight differences between some of the contract provisions, materially they are "strikingly similar." For example, in *Local 2238*, the contract specified certain pay provisions in the event of employee standby or in the event an employee was called at home to report for work immediately. In the instant case, the contract sets forth terms by which employees are to be paid for waiting at the work place to start working. Materially the provisions are similar.

The attorney general contends that the two contracts provide for future appropriations for dissimilar benefits: under the contract in *Local 2238*, future appropriations could be spent for certain types of work clothing and shoes, while in the contract before us, future appropriations might be spent for reimbursing an employee for loss of personal property on the job or for counseling services that an employee might receive. We think the threshold determinative questions are (1) whether the two *unidentical provisions* are concerned with *identical subject matter* (*i.e.*, are they both in fact concerned with "future appropriations"), and (2) whether the attorney general in the first case in fact argued against the substantive merits of the two provisions, not whether every single item contracted for in each contract was identical. The record clearly shows that both contract provisions were concerned with identical subject matter and that the attorney general argued against the substantive merits of both contracts in the two cases.

After we know that the attorney general in the first case did argue against those parts of the first contract that involved the same subject matter as that covered by pertinent parts of the second contract, we then need to ask whether the second contract would have disposed of materially the same employee rights as were disposed of in the first contract. So long as the same employee rights under materially similar provisions in the second case were at issue in the first case, and so long as those rights were disposed of by a ruling in the first case, then it does not matter that one contract provision promised the employees clothing and shoes while the other promised them counseling.

We apply this analysis to another example from the two contracts. In the first contract that the attorney general sought to reject, there were certain provisions allowing employees leave time for voting, taking care of sick family members, and attending family funerals. In the second contract, there were similar albeit unidentical provisions on an identical subject matter—granting leave time for care of newborn infants and chronically ill children. While the items provided for in both contracts were not identical, the attorney general nonetheless was given a full and fair opportunity to defend against, and did defend against, the inclusion of such similar leave-time provisions in the first contract.

That part of the first contract which was dispositive of the parties' leave-time rights was fully litigated. In the second case, materially similar provisions from a contract covering identical subject matter need not be relitigated if again contested by the attorney general.

To repeat: By principles of collateral estoppel, the Local in the case at bar is not required to relitigate, and the attorney general is estopped from contesting, leave-time provisions when another local's materially similar leave-time rights under a different contract were disposed of by a prior court construing contract provisions covering identical subject matter. It matters not that one contract was concerned with employee leave to attend to a sick child while the other contract was concerned with attendance at a funeral.

This does not mean that particularized contract provisions will always be judicially deemed similar merely because they are involved with the same general subject matter or come under the same general heading. We could conceive of a union's either deceptively or mistakenly placing two entirely dissimilar contract provisions under similar headings or arguing that they involved the same subject matter when in fact they didn't. We merely find that under the facts of this case Judge Herrera was right to rule that the contract before him contained provisions that were "strikingly similar" to the contract provisions ruled on by Judge Encinias. We further find that similar rights involving identical subject matter were disposed of by the court in the first case.

In a future case, the attorney general is free to raise the same argument that he has raised here as to the dissimilarity of purportedly similar contract provisions in two different contracts contested in two different lawsuits, and should he make a better case of showing dissimilarity, he may be entitled to prevail. We are persuaded neither from the record, nor from the briefs, nor from the attorney general's oral argument—where counsel was unable to provide us with a "best-shot" example of two egregiously dissimilar provisions—that

Judge Herrera erred in ruling as he did on collateral estoppel.

Our holding is consistent with that in *Silva v. State*, 106 N.M. 472, 745 P.2d 380 (1987), wherein Justice Ransom ably and concisely discussed the standards for application of the doctrine of offensive collateral estoppel. *Id.* at 475–76, 745 P.2d at 383–84. As Justice Ransom noted, "The trial court is in the best position to decide whether a party against whom estoppel is asserted has had a full and fair opportunity to litigate." *Id.* at 476, 745 P.2d at 384. Judge Herrera made such a determination here, and made it correctly. Further, Judge Herrera correctly decided that "the record [was sufficient for him] to determine what issues were actually and necessarily determined [against the attorney general in the instant action] by prior litigation." *Cf. id.*

Justice Ransom in *Silva, id.* at 475–76, 745 P.2d at 383–84, has already analyzed the United States Supreme Court's holding in *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979), wherein the Court enunciated its standard for application of offensive collateral estoppel. We will not repeat that discussion here. We find support for the position we have taken herein in post-*Parklane* decisions by the Court involving claim and issue preclusion. We find the Court moving away from technical definitions and standards for the imposition of doctrines like collateral estoppel and toward determinations based on a policy of finality that is to be arrived at on a case by case basis. In other words, in recent years, the Court has cared less for the name by which one calls claim or issue preclusion than it has for the policy which is to be served in applying principles of finality.

This is best illustrated in *Arizona v. California*, 460 U.S. 605, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983), wherein the Court held that rights of Indian tribes to the waters of the Colorado River were not relitigable, owing to the policy of finality adhering to the tribes' water rights as established in a prior decree (373 U.S. 546, 83 S.Ct. 1468, 10 L.Ed.2d 542 (1963)) on the same issue. The

**438**

Court differed with the Special Master's determination of the issue on law-of-the-case principles, because the Court sought a higher degree of finality than law-of-the-case doctrine would afford. 460 U.S. at 619, 103 S.Ct. at 1391.

The Court noted that:

[W]hile * * * technical rules of preclusion are not strictly applicable, the principles upon which these rules are founded should inform our decision. It is clear that res judicata and collateral estoppel do not apply if a party moves the rendering court in the same proceeding to correct or modify its judgment. Nevertheless, a fundamental precept of common-law adjudication is that an issue once determined by a competent court is conclusive.

*Id.* (Citations omitted.)

Just as the Court did in *Arizona v. California,* we find the principles of finality adhering to prior judicial rulings as important if not more important than technical definitions that may have been necessary to satisfy standards of a bygone era overly concerned with black-letter rules of law. In applying principles of finality upon which offensive collateral estoppel is based, we find that the trial court's ruling was correct in every respect.

For the foregoing reasons the district court is affirmed.

IT IS SO ORDERED.

RANSOM and BACA, JJ., concur.