**ILLINOIS FARMERS INSURANCE COMPANY, Appellant,**

v.

**Janet Dawn REED, et al., Respondents,**

**Richard Peschong, et al., Respondents,**

**First Health, Defendant.**

No. C2–02–123.

Court of Appeals of Minnesota.

July 23, 2002.

Timothy P. Tobin, Matthew H. Morgan, Gislason & Hunter LLP, Minnetonka, for appellant.

Michael A. Zimmer, Tewksbury, Kerfeld & Zimmer, P.A., Minneapolis, for respondents Reed.

Sharon L. Van Dyck, Mark H. Gruesner, Schwebel, Goetz & Sieben, P.A., Minneapolis, for respondents Peschong.

Considered and decided by KLAPHAKE, Presiding Judge, WILLIS, Judge, and HANSON, Judge.

## OPINION

HANSON, Judge.

Respondents sued their son's daycare provider, who had been convicted of assault and malicious punishment of a child based on an incident in which the child suffered a severe brain injury. The daycare provider tendered the defense of respondents' action to appellant insurer, under her homeowner's policy. Appellant insurer filed a declaratory judgment action seeking a declaration that coverage for the occurrence was precluded by the policy's intentional-acts exclusion. Appellant insurer then moved for summary judgment, arguing that the daycare provider was collaterally estopped by her criminal conviction from denying that she intentionally

injured the child. The district court denied the motion but certified as important and doubtful the question of whether Minnesota law permits criminal convictions to be used for collateral-estoppel purposes when the criminal defendant does not seek to profit from the crime in a subsequent civil proceeding. We answer the certified question in the affirmative, reverse the denial of summary judgment, and remand.

## FACTS

J.P. was severely injured while at the home of Janet Reed, his daycare provider. Reed claimed that J.P. hurt himself when he fell headfirst on the kitchen floor while attempting to walk. She later admitted that she shook him. Reed was charged with first-degree assault, a violation of Minn.Stat. § 609.221 (1998), and malicious punishment of a child, a violation of Minn. Stat. § 609.377 (1998). At her criminal trial, Reed maintained that J.P.'s injuries resulted from a fall and not from being shaken. She also argued that even if the shaking caused J.P.'s injuries, the state could not prove intent because she did not intend to injure him, only to revive him after he fell. The state presented testimony from seven medical experts that eliminated a fall as the cause of J.P.'s injury and supported the conclusion that J.P.'s injuries were caused by shaken-baby syndrome.

The district court sitting without a jury found Reed guilty of both charges. In its 100-page order, the court specifically rejected Reed's claim that J.P. injured himself when he fell and found that his injuries were the result of being shaken. The court concluded beyond a reasonable doubt that Reed "caused [J.P.'s] injuries and did so by an intentional act." (Emphasis omitted.) This court affirmed Reed's convictions. *State v. Reed*, No. C4-00-779, 2001

WL 243248 (Minn.App. Mar.13, 2001), *review denied* (Minn. May 15, 2001).

After the conclusion of the criminal trial, respondents J.P. and his parents, Richard and Kimberly Peschong (the Peschongs), brought a negligence action against Reed to recover for J.P.'s injuries. Reed carried a homeowner's policy with appellant Illinois Farmers Insurance Company (Illinois Farmers), and she tendered the defense of the Peschongs' action to Illinois Farmers. Illinois Farmers filed a declaratory-judgment action naming the Reeds, the Peschongs and J.P.'s medical providers as defendants. Illinois Farmers then filed a motion for summary judgment.

Illinois Farmers argued that the judgment convicting Reed of first-degree assault and malicious punishment of a child should be used as collateral estoppel to conclusively establish the facts necessary to effectuate the policy's intentional-acts exclusion, which excludes coverage for injury that is either

a. caused intentionally by or at the direction of an **insured;** or

b. results from any **occurrence** caused by an intentional act of any **insured** where the results are reasonably foreseeable.

The policy defines an "occurrence" as an "accident * * * which results * * * in **bodily injury**." The policy does not define "accident."

Relying on the supreme court's opinion in *Travelers Ins. Co. v. Thompson*, 281 Minn. 547, 163 N.W.2d 289 (1968), the Peschongs countered that a criminal conviction cannot be used as collateral estoppel in a subsequent civil case unless the criminal defendant is attempting to profit from his or her crime, and that the issue of intent must be litigated in a coverage trial.

The district court, after a thorough discussion, denied Illinois Farmers' motion

for summary judgment. The court observed that although *Thompson* involved a situation in which the convicted party was attempting to profit from his crime, *Thompson* did not specifically limit its holding to such a situation. Yet, the court found no Minnesota cases applying collateral estoppel in other situations. To the contrary, the court assumed that the use of a criminal conviction as collateral estoppel had been narrowed, since *Thompson*, by the decision in *Glens Falls Group Ins. Corp. v. Hoium*, 294 Minn. 247, 252, 200 N.W.2d 189, 192 (1972) (holding that a judgment of conviction based on a plea of guilty had no collateral-estoppel effect in a civil action).

The district court certified as important and doubtful the question set forth as the first Issue below. After framing the certified question, the district court proceeded to also answer the question, "If collateral estoppel applies generally, does it apply in this case?" The court concluded that it would. This appeal followed.

## ISSUE

1. The question certified by the district court is:

When interpreting an intentional-acts exclusion of a common liability policy, does Minnesota law permit criminal convictions to be used for collateral estoppel purposes in a subsequent civil case in situations other than those envisioned in *Travelers Ins. Co. v. Thompson*, 281 Minn. 547, 552–57, 163 N.W.2d 289, 293–94 (1968)—namely, where the criminal defendant seeks to profit from the crime in a subsequent civil proceeding?

2. If we answer the certified question in the affirmative, do the undisputed facts supply all of the elements necessary for the application of collateral estoppel?

## ANALYSIS

### I

■ We first consider whether the certified question is properly before us. The denial of summary judgment ordinarily would not be appealable until the conclusion of the proceedings. *Jostens, Inc. v. Federated Mut. Ins. Co.*, 612 N.W.2d 878, 883 (Minn.2000). This court may hear an appeal from a denial of a motion for summary judgment only "if the [district] court certifies that the question presented is important and doubtful." Minn. R. Civ.App. P. 103.03(h) (2000).[1]

■ The Minnesota Supreme Court recently reiterated the proper criteria for review of a certified question under rule 103.03(h). *Jostens*, 612 N.W.2d at 883–85. When determining whether a question is *important*, the reviewing court must consider whether:

(1) it will have statewide impact, (2) it is likely to be reversed, (3) it will terminate lengthy proceedings, and (4) the harm inflicted on the parties by a wrong ruling by the district court is substantial.

*Jostens*, 612 N.W.2d at 884 (citation omitted). A question is properly certified as *doubtful* if there is no controlling authority and "there is substantial ground for a difference of opinion." *Id.* at 884–85 (citation omitted).

The district court concluded that the question was important, in part, because "there is a high probability of reversal," stating:

This Court has denied summary judgment because the *Thompson* case has

---

1. Rule 103.03 was revised in 2001. Although this justification for appellate review is now found in paragraph (i), the language of this paragraph was not affected by the revision.

not expanded the exception to the general rule. However, nowhere in the *Thompson* decision does the Court limit the exception to the facts involved in that case. Furthermore, the stated reasons for the general rule do not apply in this case and the reasons for the exception apply to this case.

In concluding that the question was doubtful, the court stated:

Despite the findings in the criminal case, this trial judge doesn't feel that he has the authority to grant summary judgment in favor of Illinois Farmers based on *Thompson*. Granting summary judgment is analogous to a trial judge creating a new cause of action where it doesn't exist. This responsibility should be left to the Legislature or a higher Court.

The parties do not challenge the district court's decision to certify the question. Furthermore, we agree with the district court's determination that the question is important and doubtful.

## II

We next review the rationale of the decision in *Travelers Ins. Co. v. Thompson*, 281 Minn. 547, 549, 163 N.W.2d 289, 291 (1968). Thompson purchased several life insurance policies, totaling $1,055,000, on his wife's life with himself named as beneficiary on each policy. *Id.* Thompson's wife was killed and Thompson was convicted of her murder. *Id.* at 548, 163 N.W.2d at 290–91. After his conviction, Thompson sought to collect on the insurance policies. *Id.* at 548, 163 N.W.2d at 290. The insurers brought a declaration judgment action and moved for summary judgment, contending that Thompson's conviction conclusively established the facts that disqualified him from being a beneficiary under Minn.Stat. § 525.87 (1967) (stating that "[n]o beneficiary of any policy of insurance

* * * payable upon the death * * * of any person, who [feloniously] takes * * * the life upon which such policy * * * is issued, * * * shall take the proceeds of such policy.").

The district court denied the insurer's motion for summary judgment but certified as important and doubtful the question of whether Thompson's murder conviction barred his claim as a beneficiary of the policies. *Thompson*, 281 Minn. at 548, 163 N.W.2d at 290. The question before the supreme court was

whether a criminal conviction may be considered in a subsequent civil proceeding for the purpose of establishing the truth of the facts upon which the conviction was based.

*Id.* at 550, 163 N.W.2d at 291.

The supreme court agreed that the facts and issues in both the criminal and the civil case were identical. *Id.* at 550, 163 N.W.2d at 292. It recognized, however, that the then-current "general rule" precluded the use of a conviction as collateral estoppel, stating:

The general common-law rule has been that a criminal judgment is not admissible as evidence in a civil action to establish a fact determined in the criminal action nor does it constitute a bar to a subsequent civil action based upon the offense of which the party stands convicted and that the judgment of conviction is not admissible in evidence for that purpose.

*Id.* at 551, 163 N.W.2d at 292. The court explained that

[i]n addition to the absence of mutuality in the second suit, other considerations which have influenced courts in so holding are that the judgment may not be conclusive of issues which might have been litigated and determined in the initial action but which were not; failure

or inadequacy of legal representation; the drawing of a wrong inference or misapplication of law which might give rise to an erroneous result; and the rule of evidence that the judgment in a criminal case is nothing more than the opinion of 12 jurors and, consequently, hearsay.

*Id.* at 552, 163 N.W.2d at 292.

The supreme court noted that some courts had developed an exception to the general rule in cases where the defendant attempts to profit from the crime and stated that courts have done so

where the advantages to be derived from preventing relitigation would not be outweighed by the injustice that might result from foreclosing attack on the prior determination.

*Id.* at 552, 163 N.W.2d at 292–93. The supreme court observed that the

[j]ustification for overlooking the element of mutuality in the subsequent civil case is most often found in the rationale that objections to the application of collateral estoppel are not valid because the criminal conviction necessarily establishes that the requirement of a greater degree of proof has been met and because the party bound by it had every opportunity and incentive to litigate the issue.

*Id.* at 552, 163 N.W.2d at 293.

The *Thompson* decision did not specifically address the question certified to us by the district court. It did not specifically state that the exception would be limited to circumstances where the criminal defendant seeks to profit from the crime, nor

did it specifically state that the exception could be applicable in other circumstances. Accordingly, we will examine the rationale followed by the supreme court in *Thompson* in the light of the evolution of the law of collateral estoppel during the 30 years that have passed since *Thompson*, to determine the present state of the law in Minnesota with respect to the collateral estoppel effect of criminal convictions in subsequent civil actions.

■ We are satisfied that this examination should not be influenced by the supreme court's decision in *Glens Falls Group Ins. Corp. v. Hoium*, 294 Minn. 247, 200 N.W.2d 189 (1972), because the collateral-estoppel effect of a judgment of conviction based on a guilty plea is a completely separate question from the collateral estoppel effect of a judgment of conviction after trial. This is because a fundamental requirement of collateral estoppel is that the issue sought to be precluded in the subsequent proceeding must have been "actually litigated" in the former proceeding, and a conviction based on a guilty plea can never satisfy that requirement. *See Thompson*, 281 Minn. at 551, 163 N.W.2d at 292 (stating "[u]nlike the situation where a former judgment acts as an absolute bar, it is an indispensable prerequisite to collateral estoppel that the issue involved be actually litigated and determined in the former suit" (quotation omitted)); *see also* Restatement (Second) of Judgments §§ 27 and 85 cmt. b. (1980) (stating the general rule of issue preclusion and its inapplicability to guilty pleas, respectively).[2]

2. Cases from other jurisdictions recognizing this prerequisite as precluding the collateral-estoppel effect of a judgment based on a guilty plea include: *USX Corp. v. Adriatic Ins. Co.,* 99 F.Supp.2d 593, 630 (W.D.Pa.2000) (stating that the insured's guilty plea does not conclusively establish his intent or expectation to

cause bodily harm for purposes of an intentional-injury exclusion clause contained in a liability insurance policy); *AID Ins. Co. (Mut.) v. Chrest,* 336 N.W.2d 437, 440–41 (Iowa 1983) (stating that an injured third party may relitigate in a civil action an issue which was established in the criminal case by the in-

## III

We first observe that there have been considerable changes in the law of collateral estoppel since *Thompson,* all of them seemingly in the direction of expanding its application. In fact, what was viewed by *Thompson* as the "general rule," precluding the use of a conviction as collateral estoppel, appears to have now become the minority rule, and the exception that was applied in *Thompson* has now become the general rule. In assessing the impact of these trends, we find it helpful to review the origins and characteristics of collateral estoppel to understand its ability to change with changing circumstances.

The doctrine of collateral estoppel originated in the English common law and was incorporated in the common law of the United States. *See Cromwell v. County of Sac,* 94 U.S. 351, 352–54, 24 L.Ed. 195, 197–98 (1876) (adopting the doctrine as part of the common law of the United States); Robert W. Millar, *The Premises of the Judgment as Res Judicata in Continental and Anglo–American Law,* 39 Mich. L.Rev. 238 (1940) (discussing background and application of doctrines of collateral estoppel and res judicata). As a common-law doctrine, it has continued to evolve over time. It is based on the judicial policy considerations of conservation of judicial resources, preservation of the courts' integrity by preventing inconsistent

results, promotion of final judgments, and protection of parties from relitigating the same issues. *See Montana v. United States,* 440 U.S. 147, 153–54, 99 S.Ct. 970, 973–74, 59 L.Ed.2d 210 (1979) (discussing that collateral estoppel protects adversaries from "expense and vexation * * *, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions"); *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979) (stating that collateral estoppel conserves judicial resources and protects litigants).

Because of its deep common-law roots, the development of the doctrine of collateral estoppel has at times been impeded by historical restrictions that reflected earlier limitations of the judicial system. For example, one historical objection to the collateral estoppel effect of a criminal conviction was the former evidentiary rule prohibiting an interested person from testifying in a civil case. Zelman Cowen, *The Admissibility of Criminal Convictions in Subsequent Civil Proceedings,* 40 Cal. L.Rev. 225, 228 (1952). Because of that rule, a conviction that was based on the victim's testimony could not be used in a later civil action brought by the victim. While this evidentiary rule was abrogated with the adoption of the Evidence Act of 1843, the general rule against recognizing

sured's guilty plea); *Brohawn v. Transamerica Ins. Co.,* 276 Md. 396, 347 A.2d 842, 848 (1975) (noting an insured who pleads guilty to a criminal charge may later relitigate issues established by her admission of guilt); *N.W. Nat. Cas. Co. v. Phalen,* 182 Mont. 448, 597 P.2d 720, 727 (1979) (stating that the insured's guilty plea to criminal charges based on the same issue as the later civil action was not conclusive as to his policy coverage); *Prudential Prop. & Cas. Ins. Co. v. Kollar,* 243 N.J.Super. 150, 578 A.2d 1238, 1241 (Ct.App. Div.1990) (stating that a guilty plea may not be used for collateral estoppel in subsequent

litigation because the plea agreement does not represent the full and fair litigation of the issues due to the many possible motives behind a plea agreement); *Safeco Ins. Co. of Am. v. McGrath,* 42 Wash.App. 58, 708 P.2d 657, 660 (1985) (stating that an insured who pleads guilty to a criminal charge is not later barred from relitigating those issues established by his admission of guilty); *Peterson v. Maul,* 32 Wis.2d 374, 145 N.W.2d 699, 704 (1966) (injured third party is not precluded from relitigating in a civil action an issue that was established by an insured's guilty plea pursuant to a plea agreement).

the collateral-estoppel effect of a criminal conviction continued long thereafter. *Id.* at 228–29.

Another historical objection to the collateral-estoppel effect of a criminal conviction was the theory of mutuality of estoppel, which originated in contract and property cases. *See generally, Id.* at 228–29. Under that theory, a judgment could operate as collateral estoppel only when all the parties to the civil proceeding were bound by the judgment; that is, a person could not be estopped by an earlier judgment unless that person could have used it as a protection had the judgment gone the other way. *Id.* If a judgment of acquittal could not be used by the criminal defendant in a subsequent civil action (because an acquittal is a finding that the fact was not proved beyond a reasonable doubt and the civil burden of proof requires only a fair preponderance of the evidence), mutuality also prevented a criminal defendant from being estopped by a judgment of conviction. *Eagle, Star and British Dominions Ins. Co. v. Heller,* 149 Va. 82, 140 S.E. 314, 316 (1927); *see also, e.g., Zdanok v. Glidden Co., Durkee Famous Foods Div.,* 327 F.2d 944, 954 (2d Cir.1964).

At the time *Thompson* was decided in 1969, the basis for the general rule that a criminal judgment of conviction could not be given collateral-estoppel effect in a subsequent civil action continued to be the theory of mutuality. 47 Am.Jur.2d *Judgments* § 644 (1995). And the jurisdictions that recognized an exception to that general rule typically based that exception on public-policy concerns, to prevent the criminal defendant from profiting from the crime. *See, e.g., Conn. Fire Ins. Co. v. Ferrara,* 277 F.2d 388, 392 (8th Cir.1960) (holding that the insured's conviction of arson of insured premises could be considered for collateral-estoppel purposes where the criminal defendant brought a civil action to recover on the policy); *Austin v. United States,* 125 F.2d 816, 819 (7th Cir.1942) (stating that the beneficiary of an insurance policy was collaterally estopped by his conviction of murdering the insured); *Teitelbaum Furs, Inc. v. Dominion Ins. Co.,* 58 Cal.2d 601, 25 Cal.Rptr. 559, 375 P.2d 439, 441–42 (1962) (holding that corporations were collaterally estopped from recovering insurance where their president was convicted of causing the loss); *In re Greifer's Estate,* 333 Pa. 278, 5 A.2d 118, 118 (1939) (holding that a conviction of first-degree murder collaterally estopped the beneficiary from claiming benefits under a trust); *Heller,* 140 S.E. at 321 (1927) (stating that a criminal conviction for arson collaterally estopped the insured's attempt to collect on the fire insurance policy).

Although the Minnesota Supreme Court has not revisited the precise issue since *Thompson,* it is clear from a survey of other jurisdictions that the former "general rule" has been replaced by what had previously been seen as the exception. *See Breeland v. Sec. Ins. Co. of New Haven, Conn.,* 421 F.2d 918, 922 (5th Cir. 1969) (applying Louisiana law and noting that "[t]he number of jurisdictions holding that a criminal conviction precludes litigation of the same issue in a civil suit is ever increasing"); *see also Wehling v. Columbia Broad. Sys.,* 721 F.2d 506, 508 (5th Cir.1983) (discussing Texas' move away from this general rule); *United States v. Frank,* 494 F.2d 145, 160 (2d Cir.1974), (discussing application of collateral estoppel to criminal-civil context); *May v. Oldfield,* 698 F.Supp. 124, 125–26 (E.D.Ky. 1988) (noting federal and state cases addressing this issue); *Aetna Cas. & Sur. Co. v. Niziolek,* 395 Mass. 737, 481 N.E.2d 1356, 1360 (1985) (noting jurisdictions that have done so); *Hopps v. Utica Mut. Ins. Co.,* 127 N.H. 508, 506 A.2d 294, 297 (1985) (noting that "there is a stronger rationale

for applying collateral estoppel against a former criminal defendant than for applying it against a party to a prior civil case, since the criminal defendant has had the benefit of the presumption of innocence and the State's obligation to prove any fact essential to the conviction beyond a reasonable doubt."); *Seattle–First Nat'l Bank v. Cannon,* 26 Wash.App. 922, 615 P.2d 1316, 1319 (1980) (same).

This change, whereby the exception has become the new general rule, resulted from a more critical analysis of the four historical objections to collateral estoppel that were noted in *Thompson.* 281 Minn. at 551–2, 163 N.W.2d at 292.

*Mutuality of Estoppel*

Most courts that have considered the use of a criminal conviction as collateral estoppel in a subsequent civil suit have now abandoned the rule of mutuality. *See, e.g., United States v. Jensen,* 608 F.2d 1349, 1355 (10th Cir.1979) (noting that the application of non-mutual collateral estoppel, when used offensively, lies within the district court's discretion); *County of Cook v. Lynch,* 560 F.Supp. 136, 138 (N.D.Ill. 1982) (noting that the doctrine of mutuality of estoppel has been eroded); *Sec. Exch. Comm'n v. Everest Mgmt. Corp.,* 466 F.Supp. 167, 172 n. 6 (S.D.N.Y.1979) (noting that "mutuality of parties is no longer essential for the operation of an estoppel, as long as the party against whom the estoppel is asserted * * * was afforded a full and fair opportunity to litigate the identical issue in the prior proceeding" and citing *Parklane Hosiery,* 439 U.S. at 332, 99 S.Ct. at 651–52, and *Zdanok,* 327 F.2d at 954–56); *Harris v. Jones,* 471 N.W.2d 818, 820 (Iowa 1991) (noting that Iowa courts "have abandoned the strict doctrine of mutuality in both offensive and defensive uses of issue preclusion"); *Knoblauch v. Kenyon,* 163 Mich.App. 712, 415 N.W.2d 286, 290 (1987) (stating that the mutuality

requirement is inapplicable where "the issue presented has been decided and appealed and the plaintiff has had a full and fair opportunity to litigate the question in his prior case").

*Procedural Differences*

Differences in procedures between criminal and civil proceedings present a objection to the use of a civil judgment in a subsequent criminal action. *See, e.g., State v. Wagner,* 637 N.W.2d 330, 338 (Minn.App.2001) (stating that the result in a civil proceeding cannot be used to bind a criminal defendant on any element of a crime). But such an objection does not apply to the use of a judgment of conviction as collateral estoppel in a civil case. Because there are greater procedural protections in a criminal case—the standard of proof is higher and the procedural safeguards are numerous and more stringent—the judgment of conviction necessarily meets all of the procedural requirements of a judgment in a civil case. *See, e.g., United States v. Gramling,* 180 F.2d 498, 501–02 (5th Cir.1950) (stating that possession in a criminal case is sufficient to show possession in a civil case); *United States v. Dantzler Lumber & Exp. Co.,* 810 F.Supp. 1277, 1282 (Ct. Int'l Trade 1992) (stating that a criminal judgment is conclusive in a subsequent civil action because of the higher standard of proof); *Everest Mgmt. Corp.,* 466 F.Supp. at 172 (discussing higher standard of proof and procedural safeguards in a criminal trial); *Mueller v. J.C. Penney Co.,* 173 Cal. App.3d 713, 721, 219 Cal.Rptr. 272 (Cal. Ct.App.1985) (same); *Hopps,* 506 A.2d at 297 (noting criminal trial's higher standard of proof and presumption of innocence); *S.T. Grand, Inc. v. New York,* 32 N.Y.2d 300, 344 N.Y.S.2d 938, 298 N.E.2d 105, 107 (N.Y.1973) (discussing the various safeguards in a criminal case); *Crowall v. Heritage Mut. Ins. Co.,* 118

Wis.2d 120, 346 N.W.2d 327, 331 (Ct.App. 1984) (noting higher standard of proof and other safeguards in a criminal case).

*Hearsay or Opinion of the Criminal Jury*

■ A third objection to the use of a criminal conviction as collateral estoppel was the concern that the criminal judgment is hearsay or merely the criminal jury's opinion. Hearsay and opinion concerns, however, are only relevant to the issue of admissibility and have no application to the doctrines of res judicata or collateral estoppel. *Tidwell v. Booker,* 290 N.C. 98, 225 S.E.2d 816, 823 (1976); *see generally,* Cowen, *supra,* at 239–40 (discussing and rejecting hearsay and opinion concerns). Were this a valid objection, it would eliminate the doctrine of collateral estoppel completely because every judgment is based on the opinion of another court or jury on the facts before them.

*Stare Decisis*

■ Some jurisdictions continued to follow the former general rule simply because they determined that stare decisis required them to do so. *See, e.g., Schindler v. Royal Ins. Co.,* 258 N.Y. 310, 179 N.E. 711, 712 (1932) (declining to apply a criminal conviction as conclusive evidence of the defendant's guilt, based on the doctrine that courts should not set aside "precedents * * * even though they seem archaic" (citation omitted)). Stare decisis, however, "is not an inflexible rule of law but rather a policy of the law." *Johnson v. Chicago, Burlington & Quincy R.R. Co.,* 243 Minn. 58, 68, 66 N.W.2d 763, 770 (1954).

[W]hen a rule, after it has been duly tested by experience, has been found to be inconsistent with the sense of justice or with the social welfare, there should be less hesitation in frank avowal and full abandonment.

*Oanes,* 617 N.W.2d at 406 (quoting Benjamin N. Cardozo, *The Nature of the Judicial Process* 150 (1921)). " '[T]he mere fact that an error has been committed is no reason or even apology for repeating it, much less for perpetuating it.' " *Oanes,* 617 N.W.2d at 406 (emphasis and quotation omitted).

This evolution of the collateral-estoppel effect of a criminal conviction has paralleled to the expansion of the law of the collateral-estoppel effect of civil judgments. The United States Supreme Court eliminated the mutuality requirement for a civil judgment in *Blonder–Tongue Labs., Inc. v. Univ. of Ill. Found.,* 402 U.S. 313, 349–50, 91 S.Ct. 1434, 1453, 28 L.Ed.2d 788 (1971). Subsequent cases substituted the requirement that collateral estoppel applied so long as the party against whom estoppel is asserted had a "full and fair opportunity" to litigate the issues. *Parklane Hosiery Co.,* 439 U.S. at 327–28, 331–32, 99 S.Ct. at 650–52.

■■ Most courts have also expanded collateral estoppel to allow both offensive and defensive use.[3] *See, e.g., Hunter v. City of Des Moines,* 300 N.W.2d 121, 126 (Iowa 1981) (recognizing that offensive collateral estoppel may be used where the defendant was afforded a full and fair opportunity to litigate the issues in a prior action); *Haran v. Bd. of Registration in Med.,* 398 Mass. 571, 500 N.E.2d 268, 272

---

**3.** Defensive collateral estoppel prevents a plaintiff "from asserting a claim that the plaintiff has previously litigated and lost against another defendant." *Id.* at 326 n. 4, 99 S.Ct. at 649 n. 4. Offensive collateral estoppel "occurs when the plaintiff seeks to foreclose the defendant from litigating an issue the defendant has previously litigated unsuccessfully in an action with another party." *Id.* Illinois Farmers proposes only defensive collateral estoppel here.

(1986) (stating that offensive use of collateral estoppel is a generally accepted practice, and that "[f]airness is the decisive consideration" (quotation omitted)); *Local 2839 of Am. Fed'n of State, County and Mun. Employees v. Udall,* 111 N.M. 432, 806 P.2d 572, 576–77 (1991) (applying doctrine of offensive collateral estoppel to bar party from raising "essentially the same defenses to essentially the same substantive contract provisions he raised at the district court level").

This expansion of the collateral-estoppel effect of a civil judgment has been recognized in Minnesota. For example, in *Ellis v. Minneapolis Comm'n on Civil Rights,* 319 N.W.2d 702, 704–705 (Minn.1982), the supreme court rejected the concept of mutuality by determining that a judgment in favor of the landlord, which rejected a defense of racial discrimination, collaterally estopped the tenant's charge of racial discrimination filed with the Minneapolis Commission of Civil Rights.

And in *Aufderhar v. Data Dispatch, Inc.,* 452 N.W.2d 648, 651–52 (Minn.1990), the supreme court held that collateral estoppel was appropriate so long as the party to be estopped was present in both proceedings and had a full and fair opportunity to litigate the identical issue. The court stated

> [a]lthough some jurisdictions require "mutuality" of parties in cases involving previously determined litigation as a predicate to the invocation of collateral estoppel, Minnesota does not.

*Id.* at 650.

## IV

In the context of these developments in the law of collateral estoppel, we conclude that the collateral-estoppel effect of a criminal conviction under Minnesota law is not limited to situations in which a criminal defendant seeks to profit from the crime. Instead, the collateral-estoppel effect of a criminal judgment should be determined in the same manner and under the same criteria as for any other judgment.

This precise issue was addressed in *Wolfson v. Baker,* 623 F.2d 1074, 1077–81 (5th Cir.1980). Wolfson was convicted after a trial for violating the Securities Act of 1933. *Id.* at 1075. Wolfson then filed a civil complaint against various brokerage firms for damages, claiming they fraudulently induced Wolfson to violate the securities laws. *Id.* at 1075–76. The district court held that the determinative issue of his complaint was whether he had knowledge that the security laws required him to file a registration statement before engaging in certain transactions and that non-mutual collateral estoppel from the criminal conviction prevented him from denying in the civil action that he had such knowledge. *Id.* at 1076–77. The district court concluded:

> Wolfson had a full and fair opportunity to litigate the issue of his knowledge, that the issue of his knowledge had been directly determined in the criminal trial, and that no injustice would result from the application of collateral estoppel in this case.

*Id.* at 1077. The court of appeals affirmed, specifically rejecting Wolfson's assertion that a criminal conviction may only be used as collateral estoppel in a subsequent civil case when the party to be estopped is attempting to profit from the criminal actions. *Id.* at 1078 n. 2 (stating "it is clear from our examination of the cases cited above that, in this Circuit, the use of a prior conviction to collaterally estop a party in a subsequent action does not depend upon an attempt by that party to benefit from the crime").

The Restatement likewise recognizes that the preclusive effect of a criminal

judgment should not depend on the situation in which the criminal defendant seeks to profit from the criminal act. Restatement, Judgments (Second) § 85 cmt. e. The comment explains:

> There are two basic patterns for applying issue preclusion in favor of a third party. The clearest situation is where the person who was convicted of an offense brings an action against the third party to assert a claim that rests on factual premises inconsistent with those established in the criminal prosecution. * * * The other situation is where the person harmed by the conduct that was criminally prosecuted then brings an action for civil redress against the wrongdoer for the consequences of the conduct. * * * Although the courts were somewhat slower in coming to apply issue preclusion in the latter situation than in the former, it is now settled that preclusion should apply in both.

The statement of the new general rule can be found in Restatement, Judgments (Second), § 85 as follows:

> With respect to issues determined in a criminal prosecution:
>
> * * * *
>
> (2) A judgment in favor of the prosecuting authority is preclusive in favor of a third person in a civil action:
>
> (a) Against the defendant in the criminal prosecution as stated in § 29 [repudiating the mutuality rule with respect to the effect of a civil judgment].

Comments to this Restatement Section explain as follows:

> At an earlier period in the development of res judicata doctrine, the "mutuality" requirement was an obstacle to applying issue preclusion in favor of such a third party. That is, since the third party would not have been bound in his civil action if the prosecution had resulted in an acquittal, under the mutuality rule it would follow that the third party could not take advantage of the issue determined in a conviction. However, long before the mutuality rule was repudiated in civil cases, well-reasoned decisions had extended the rule of preclusion to operate in favor of third persons where the first action is criminal and the second is civil.

*Id.* cmt. e.

Thus, the judgment convicting Reed should be examined under the same elements of collateral estoppel as are applied generally in Minnesota law. Accordingly, we answer the certified question in the affirmative.

## V

■ Having answered the certified question by concluding that collateral estoppel applies generally, we could end our review and remand the matter to the district court for a determination of whether collateral estoppel applies in this case. As noted earlier, the district court has already made that determination and concluded that all of the elements of collateral estoppel are met in this case. Although the district court did not specifically certify the question of whether collateral estoppel applies in this case, we conclude that we should review that question in the interest of justice. *See* Minn. R. Civ.App. P. 103.04 (stating that an appellate court may review any matter "as the interest of justice may require"). The general policies that might otherwise persuade us to limit our review to the certified question (to avoid piecemeal litigation, to conserve judicial resources, and to expedite trial proceedings) would not be served by remanding the matter to the district court because the district court has already decided the remaining issues and the Peschongs would

inevitably return the case to this court on appeal from the entry of summary judgment in favor of Illinois Farmers.

In *Aufderhar*, the supreme court stated the four elements generally required for collateral estoppel to apply:

> (1) the issue was identical to one in a prior adjudication; (2) there was a final judgment on the merits; (3) the estopped party was a party or in privity with a party to the prior adjudication; and (4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issue.

452 N.W.2d at 650 (citation omitted); *see also, Falgren v. State, Bd. of Teaching*, 545 N.W.2d 901, 905 (Minn.1996) (noting that collateral estoppel is not rigidly applied, and, "[a]s a flexible doctrine, the focus is on whether its application would work an injustice on the party against whom estoppel is urged"(quotation omitted)).

The district court thoroughly analyzed each of the four elements of collateral estoppel. There is no dispute that the criminal judgment of conviction is final for collateral-estoppel purposes. The Peschongs challenge the district court's conclusions with respect to the other three elements; that is, whether the issue presented by the intentional-acts exclusion is identical with the issue decided in the criminal case, whether the party to be estopped in this declaratory judgment action was a party or in privity with a party in the criminal case, and whether the party to be estopped was given a full and fair opportunity to be heard on the adjudicated issue in the criminal case.

*Identity of Issues*

The intentional-acts exclusion of Reed's insurance policy precludes a claim under the policy if J.P's injury either (1) was "caused intentionally by * * * [Reed]" or (2) "result[ed] from any occurrence caused by an intentional act of [Reed] where the results are reasonably foreseeable." (Emphasis omitted.)

The Peschongs argue that the criminal judgment did not adjudicate either of those issues because it only determined that Reed intentionally shook J.P. and did not determine that Reed intentionally caused J.P.'s injuries. The Peschongs rely on the distinction made in *Am. Family Ins. Co. v. Walser*, 628 N.W.2d 605, 611 (Minn.2001), that comparable language in an intentional-acts exclusion required proof of a specific intent to injure, not just an intent to engage in conduct that caused an injury. The district court in the present case was cognizant of the distinction in *Walser* and examined the adjudication of guilt for assault in the first degree with that distinction in mind.

The district court first looked to the definition of assault as "[t]he intentional infliction of or attempt to inflict bodily harm upon another." Minn.Stat. § 609.02, subd. 10(2) (1998).[4] The court noted that, in the criminal adjudication, the elements that were "seriously in dispute were the elements of 'intentionality' and 'causation'" and that the court in the criminal case stated

> the issue in this case is whether the State has proved beyond a reasonable doubt whether defendant Reed intentionally inflicted bodily harm on [J.P.] and whether any of her intentional con-

---

4. Further, " '[i]ntentionally' means that the actor either has a purpose to do the thing or cause the result specified or believes that the act performed * * * will cause that result[,]" and " '[w]ith intent to' or 'with intent that' means that the actor either has a purpose to do the thing or cause the result specified or believes that the act * * * will cause that result." Minn.Stat. § 609.02, subd. 9(3), (4) (1998).

*duct was the cause of his great bodily harm.*

The court in the criminal adjudication concluded that "[t]he State has proven beyond a reasonable doubt its proposition (allegation) that defendant Reed intentionally inflicted injuries on [J.P.] by vigorously shaking him" and explained

> our finding that the State has proved beyond a reasonable doubt its basic allegation that [Reed] vigorously shook [J.P.] subsumes and includes proof beyond a reasonable doubt that [Reed] *caused* [J.P.'s] injuries and did so by an *intentional* act.

The court in the criminal adjudication rejected Reed's argument "that the State could not possibly prove [Reed's] criminal intent or intentionality," because that argument

> lacks every one of the predicate facts: [J.P.] did not fall * * *; he did not need to be "revived" * * *; and [Reed] * * * was not trying to "revive" or "resuscitate" [J.P.].

Thus, based on its conclusion that Reed intentionally caused J.P.'s injuries, and did so by her intentional act of shaking him, the court in the criminal adjudication found Reed guilty of first-degree assault.

Because a finding of intent to injure was necessary to the adjudication of Reed's guilt for assault, and because the district court found that Reed did intend to injure J.P. when she shook him, we conclude that the issue determined by the judgment of conviction is identical with the issue presented by each of the alternative parts of Illinois Farmer's intentional-acts exclusion. *See, e.g., Green v. City of Coon Rapids,* 485 N.W.2d 712, 718 (Minn.App.1992) (stating that the doctrine of collateral estoppel is applicable only where the issue is actually litigated in the earlier adjudication and is essential to the resulting judgment), *review denied* (Minn. June 30, 1992).

### Parties and Privity

The Peschongs argue that application of collateral estoppel is improper because they were not parties to the criminal proceeding and are not in privity with Reed. This argument is based on a misconception of who is the "estopped party" for collateral-estoppel purposes and of the status of the Peschongs in this action.

Illinois Farmers properly joined the Peschongs as defendants to this declaratory-judgment action because they were persons potentially affected by a declaratory action. *See* Minn.Stat. § 555.11 (2000) (providing that persons who have or claim an interest that would be affected by a declaration must be made parties); *Walser,* 628 N.W.2d at 606–07 (reviewing a declaratory judgment action in which the insurer likewise joined the injured minor and his parents as defendants); *Milbank Ins. Co. v. B.L.G.,* 484 N.W.2d 52 (Minn. App.1992) (reviewing declaratory-judgment action where insurer joined insured as a defendant), *review denied* (Minn. July 16, 1992). But despite their status as proper parties to this action, the Peschongs are not parties to the Illinois Farmers' insurance policy and their interests in that policy derive exclusively from the interests of Reed. Thus, the fact that Reed was a party in the criminal proceeding satisfies this element of collateral estoppel even though the Peschongs were not.

### Full and Fair Opportunity to be Heard

The final element to be considered when determining whether collateral estoppel is applicable is whether the *estopped* party was given a full and fair opportunity to be heard in the prior proceeding. *Aufderhar,* 452 N.W.2d at 650. Having decided that this element focuses on Reed, as the criminal defendant, not on the Peschongs, we conclude that there can be no dispute that

Reed had a full and fair opportunity to be heard.

When considering whether the person to be estopped had a full and fair opportunity to be heard, courts consider the seriousness of the offense on which the earlier judgment was based. *See, e.g., State Farm Fire & Cas. Co. v. Miles,* 730 F.Supp. 1462, 1466 (S.D.Ind.1990) (stating that, under the relevant statute, for a criminal conviction to apply as collateral estoppel, the conviction must have been for a felony); *Aetna Cas. & Sur. Co. v. Jones,* 220 Conn. 285, 596 A.2d 414, 425–26 (1991) (stating that the seriousness of the charge is one factor to be considered in determining whether a defendant had a full and fair opportunity to litigate an issue in a criminal process); *Folino v. Young,* 523 Pa. 532, 568 A.2d 171, 172 (1990) (conviction of summary offense of driving at unsafe speed could be given preclusive effect in a later civil proceeding because the defendant had the incentive to litigate the charge as an operative fact in a related non-summary offense of vehicular manslaughter).

Here, the stakes in Reed's criminal trial were extremely high, and she had every opportunity and incentive to fully present and argue her case. Reed was represented by counsel, and her counsel actively challenged the state's evidence and offered evidence on her behalf. *See Ellis,* 319 N.W.2d at 704 (finding that the proceeding was not summary where the trial lasted four days, both parties were represented by counsel, and the respondent had the opportunity to present evidence in support of his defense); *cf. Johnson v. Consol.*

*Freightways, Inc.,* 420 N.W.2d 608, 613–14 (Minn.1988) (finding that the determination of the driver's comparative fault in an arbitration proceeding could not be used as collateral estoppel in a later wrongful-death action where the earlier proceeding afforded neither party to the later action a "full and fair" opportunity to litigate comparative fault).

## DECISION

Because a criminal judgment of conviction may be used as collateral estoppel in a subsequent civil action even when the action is not one in which the criminal defendant seeks to profit from the crime, we answer the certified question affirmatively. Because the criminal judgment convicting Reed of first-degree assault adjudicated the identical issue presented by Illinois Farmers' intentional-acts exclusion, that issue was actually litigated in the criminal proceeding, and Reed had a full and fair opportunity to be heard in the criminal proceeding, we conclude that the application of collateral estoppel in this case is appropriate and will not result in an injustice. Accordingly, we reverse the denial of Illinois Farmers' motion for summary judgment and remand for the entry of judgment consistent with this opinion.

**Certified question answered in the affirmative; reversed and remanded.**