561 P.2d 43

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**Frank PINA, Defendant-Appellant.**

**No. 2657.**

Court of Appeals of New Mexico.

Feb. 22, 1977.

Peter B. Shoenfeld, Santa Fe, for defendant-appellant.

Toney Anaya, Atty. Gen., John J. Duran, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

WOOD, Chief Judge.

This appeal involves the Meat Inspection Act. Sections 54–8–6 to 54–8–21, N.M.S.A. 1953 (Repl. Vol. 8, pt. 2, Supp.1975). Defendant has been convicted by a jury of slaughtering without a proper inspection, selling uninspected meat. and failure to comply with regulations of the Livestock Board. Defendant represented himself at trial but has had the services of appointed counsel for the appeal. Nine issues are presented; five are grouped under point four. The points discussed are: (1) sufficiency of the evidence, (2) refusal to inspect, (3) validity of the regulations, (4) miscellaneous claims, and (5) the sentences.

### Sufficiency of the Evidence

Defendant challenges the sufficiency of the evidence as to each of the convictions. In reviewing these contentions we consider the evidence, and permissible inferences therefrom, in the light most favorable to the verdict. *State v. Lucero,* 88 N.M. 441, 541 P.2d 430 (1975).

Applying the aforestated standard of review, there is evidence to the following effect.

In the fall of 1975, the Livestock Board had licensed slaughtering and selling operations at the physical location involved in the charges against defendant. The record is unclear as to the name of the slaughtering business; the selling operation was conducted under the name of Sweetmeat or Sweetmeat, Inc. In January, 1976, W. F. Hunt applied for two licenses—slaughterer and fresh meat dealer. The applications listed the name of each business as "Pursuit of Happiness" and listed the owner for each business as Hunt and Pina. Each license was issued in the names of these two men; subsequently, an inspector saw the licenses posted in the office of the businesses. These two licenses were described as having been transferred from prior licensees. After the licenses were issued to Hunt and Pina, "Pursuit of Happiness" conducted the slaughtering operation and "Sweetmeat" sold fresh meat under the "Pursuit of Happiness" license.

In the fall of 1975, an inspector had observed that slaughtering operations were being conducted in noncompliance with regulations of the Livestock Board. This noncompliance continued after the licenses were issued to Hunt and Pina. On February 10, 1976, a "Project and Progress Report" was signed by Pina under protest. This report specified corrective action that was to be taken by March 15, 1976. On March 15, 1976, the inspector observed that the corrective action had not been taken; the inspector informed someone at the slaughtering plant that there would be no more inspections until the corrections were made. The inspector called this a curtailment; the curtailment lasted for two or three days. The curtailment was in effect on March 16 and 17, 1976.

On March 16, 1976, unstamped mutton was observed in Sweetmeat's meat case. Entrails, heads and feet were observed in the slaughter plant; these items had not been present on March 15, 1976. On March 17, 1976, uninspected mutton was purchased from Sweetmeat.

Although the regulations were not introduced into evidence, a witness testified as to specific regulations that were violated. These regulations covered the items for corrective action in the "Project and Progress

Report". The items for corrective action involved a smooth finish for the walls and installing a door in the "offal" or "hide room," and repairing the drain which carried away blood in the "kill" room. There was evidence that the regulations involved were "sanitary" regulations.

There was substantial evidence that a sheep was slaughtered without inspection (Count I). Section 54–8–15(A), supra. There was substantial evidence that uninspected meat was sold (Count II). Section 54–8–15(B), supra. There was substantial evidence that regulations existed and that the regulations were violated (Count III). Section 54–8–13(J), supra, and § 47–2–19, N.M.S.A.1953 (Repl. Vol. 7, Supp.1975). There was substantial evidence that these violations occurred in the Pursuit of Happiness businesses licensed to Hunt and Pina to slaughter and sell fresh meat.

■ Defendant claims he cannot be held liable for the three crimes because there was no evidence that he was the owner of the two businesses. We fail to see the relevancy of ownership. The statutes involved, cited in the preceding paragraph, do not define the crimes in terms of ownership. No issue of ownership was included in the instructions and there was no objection by defendant to the instructions. If ownership has relevancy unperceived by this Court, the conflicting testimony given by W. F. Hunt raised a factual issue as to defendant's ownership.

Defendant claims (a) there was no evidence that he personally committed any of the crimes, (b) that he was found guilty on the basis that he was a licensee and he was not a licensee, and (c) even if he were a licensee, he cannot be liable for crimes committed by others.

We agree that there was an absence of evidence that defendant personally slaughtered the sheep on March 16th or that he sold the uninspected mutton on March 17th. We do not agree that there was an absence of evidence as to defendant's personal participation in the violation of the regulations.

Defendant signed the Project and Progress Report. Defendant's name was on the licenses and the licenses were posted on the premises. There was evidence that the prior operator turned the business over to Hunt and Pina, that Pina wanted to be named in the license applications in order to be involved in the management and operation. There was evidence that defendant gave orders concerning the operation of the businesses; an exhibit shows defendant informed the inspector as to when slaughtering was to occur (see § 54–8–10, supra); there was evidence that Pursuit of Happiness slaughtered for Sweetmeat.

■ There was substantial evidence that defendant was personally involved in the violation of the regulation, that defendant was a licensee and as licensee, defendant permitted the illegal slaughtering and selling to occur. Defendant was held liable for his own actions and not for actions of others.

■ The instruction setting forth the elements of the charge of violating regulations (Count III) states that defendant must have failed to comply with the regulations "by an unlawful and intentional *act*". Defendant asserts the evidence shows only non-action on his part. The briefs discussed when a non-act may be considered an act. We decline the invitation to discuss the semantics of "act". When the entire instruction is read, it clearly discusses a failure to comply with the regulations; the word "act" did not make the instruction confusing. There was evidence which supports the giving of this instruction.

*Refusal to Inspect*

The evidence was undisputed that upon ascertaining that the corrective action identified in the Project and Progress Report had not been taken by March 15, 1976, the inspector refused to continue with inspections until the corrections were made. Both ante-mortem and post-mortem inspections are required. Section 54–8–11, supra. Without the inspections, the Pursuit of Happiness licenses could not be legally op-

erated on a commercial basis. See § 54–8–16, supra.

The uninspected slaughtering on March 16 and the sale of uninspected meat on March 17th took place during the curtailment of inspections. Defendant asserts there was no authority for curtailment of inspections, that the only statutory authority was for suspension or revocation of meat inspection service after notice and hearing. Section 54–8–19, supra. Defendant claims the curtailment was an illegal suspension because there was no notice and no hearing. The State asserts that curtailment was something different from a suspension and that the Livestock Board and its inspectors have implied power to curtail inspections in carrying out the statutory mandate to assure that adulterated meat is not offered for sale. We do not decide whether the curtailment was legal, see § 54–8–8(B), supra, which provides that inspectors are to carry out the statutory inspections, but are also to enforce sanitary requirements.

▪ Assuming, but not deciding, that the curtailment of inspections was unauthorized administrative action, what effect does such action have on the criminal prosecution? Defendant asserts that because of the unauthorized administrative action, Counts I and II should not have been submitted to the jury. This, in effect, is a claim that the unauthorized action barred prosecution for the criminal conduct. The decisions relied on do not support defendant.

*Estep v. United States,* 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946) involved a failure to report for induction into the armed forces. *Estep* held that such a criminal prosecution could be defended on the basis that the local draft board had no jurisdiction to order the induction. Jurisdiction was used in the sense of "no basis in fact for the classification" which the local board gave to the defendant. The defense of no jurisdiction was authorized after the draft laws were reviewed and the United States Supreme Court determined there was no basis for judicial review of "no jurisdiction" orders prior to the criminal prosecution. See *Sicurella v. United States,* 348 U.S. 385,

75 S.Ct. 403, 99 L.Ed. 436 (1955) where the defense was utilized.

*Estep,* supra, does not bar a criminal prosecution because of unauthorized administration action. If *Estep* should be applicable to defendant's case, it does no more than authorize the criminal charges to be defended on the basis of the unauthorized action. Defendant utilized such a defense. Recognizing this, defendant shifts ground and asserts the trial court erred in not instructing the jury concerning the defense. No such instruction was requested; there was no error in failing to instruct on a defense when no instruction was requested. *State v. Lujan,* 87 N.M. 400, 534 P.2d 1112 (1975), cert. denied, 423 U.S. 1025, 96 S.Ct. 469, 46 L.Ed.2d 400 (1975); *State v. Romero,* 87 N.M. 279, 532 P.2d 208 (Ct.App.1975).

In *Estep,* supra, a federal court interpreted a federal statute. When a state court interprets a state statute, there is no violation of due process if the state court holds that the wrongful administrative action is no defense to the criminal prosecution and requires the defendant to seek correction of the wrongful action in civil proceedings. *Poulos v. New Hampshire,* 345 U.S. 395, 73 S.Ct. 760, 97 L.Ed. 1105, 30 A.L.R.2d 987 (1953).

Assuming the curtailment of inspections was unauthorized, defendant had the choice of complying with the curtailment and thus not slaughtering and selling contrary to the statute, or petitioning the district court to require the inspections to continue. He did neither. He proceeded to violate the law; his violation is not to be excused on the basis that an administrative official proceeded improperly. *Poulos v. New Hampshire,* supra, Note 13; *Humble Oil & Refining Co. v. United States,* 198 F.2d 753 (10th Cir. 1952), cert. denied, 344 U.S. 909, 73 S.Ct. 328, 97 L.Ed. 701 (1952). In so holding we have not overlooked *Benally v. Marcum,* 89 N.M. 463, 553 P.2d 1270 (1976). *Benally* holds that the State was divested of jurisdiction over the person of Benally because such jurisdiction was acquired by an illegal arrest. *Benally* is not applicable because there is no issue as to jurisdiction over the

person in this case. In addition, there is nothing showing that defendant's convictions are based on any illegal action by the inspector.

The claim that defendant should be excused from criminal conduct because of the State's failure to inspect is without merit.

### Validity of Regulations

Defendant contends his Count III conviction should be reversed because the regulations on which this conviction is based were invalid. The claim is "The legislature has failed to provide to the livestock board any standards by which it is to be governed in the adoption of the regulations . . . ."

This contention involves unlawful delegation of legislative authority. "It is settled that a legislative body may not vest unbridled or arbitrary power in an administrative agency but must furnish a reasonably adequate standard to guide it." *City of Santa Fe v. Gamble-Skogmo, Inc.,* 73 N.M. 410, 389 P.2d 13 (1964).

To be "reasonably adequate," the standards need not be specific. Broad standards are permissible so long as they are capable of reasonable application and are sufficient to limit and define the agency's discretionary powers. *City of Santa Fe v. Gamble-Skogmo, Inc.,* supra; see *Mourning v. Family Publications Service, Inc.,* 411 U.S. 356, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973).

A purpose of the Meat Inspection Act is "to assure the public that only pure, wholesome and unadulterated meat and meat food products are offered for sale." Section 54–8–8(A), supra. The Livestock Board is authorized to adopt rules and regulations "which shall conform as far as possible to the requirements of the rules governing meat inspection of the United States department of agriculture." Section 54–8–13, supra. The rules and regulations are to include "regulations relating to sanitation for all establishments licensed or subject to state inspection . . . ." Section 54–8–13(J), supra.

The legislative standards are adequate; there was no unconstitutional delegation of legislative authority and the sanitary regulations involved in this case are valid.

### Miscellaneous Claims

This point lists and answers various contentions which require little discussion.

(a) Defendant claims the trial court erred in refusing to appoint a non-lawyer to represent him at trial. We do not reach the question of whether appointed counsel may be a non-lawyer. Defendant was not entitled to *any* appointed counsel because he refused to fill out, under oath, a certificate of indigency showing his income. There was no showing that he was a needy person. Sections 41–22–3 and 5, N.M.S.A.1953 (2d Repl. Vol. 6).

(b) Assuming that Livestock Board inspectors are required to be bonded, defendant asserts the bonds were void because not paid for in gold or silver coin as required by Art. I, § 10 of the Constitution of the United States. The contention is based on a patent misreading of a constitutional provision limiting the powers of states, but not Congress. See 31 U.S.C.A. § 463 (1976) and the cases annotated thereunder; *Chermack v. Bjornson,* 302 Minn. 213, 223 N.W.2d 659 (1974); *Leitch v. State, Department of Revenue,* 16 Or.App. 627, 519 P.2d 1045 (1974).

(c) Defendant asserts the district court complaint was "jurisdictionally" deficient because it did not set forth all the elements listed in R.Crim.P. 5(b). To the extent that the complaint, standing alone, could be considered defective, any such defect was cured by the Bill of Particulars filed by the State. *State v. Lindsey,* 81 N.M. 173, 464 P.2d 903 (Ct.App.1969), cert. denied, 398 U.S. 904, 90 S.Ct. 1692, 26 L.Ed.2d 62 (1970). Even if the complaint were defective, such defect would not be jurisdictional in this case. See R.Crim.P. 7.

(d) Count I of the complaint charged the slaughter without inspection occurred "on or about" March 17, 1976.

The Bill of Particulars states the killing occurred "on" March 17, 1976. The proof at trial was that the slaughter occurred on March 16, 1976; Count I was submitted to the jury, without objection, on the basis of the March 16th date. Defendant asserts the Count I conviction must be reversed because of failure of proof. Defendant relies on *State v. Salazar,* 86 N.M. 172, 521 P.2d 134 (Ct.App.1974). *Salazar* is inapplicable to the facts of this case. R.Crim.P. 7(c) states that a variance between the complaint and evidence is not grounds for acquittal unless the variance prejudices substantial rights of defendant. There is nothing showing the variance prejudiced defendant's rights.

 (e) Defendant asserts the prosecutor improperly commented on defendant's failure to testify. The prosecutor informed the jury that its decision should be based on the testimony given under oath and not upon arguments of counsel or comments of defendant from the podium. This was proper comment. The transcript shows that throughout the trial defendant made statements and arguments, and misstated the evidence, all in his role as counsel for himself.

### The Sentences

Section 54–8–15, supra, declares slaughter without inspection and the sale of uninspected meat to be misdemeanors. Section 47–2–19, supra, declares the violation of a regulation of the Livestock Board to be a petty misdemeanor.

The trial court's sentencing authority for these offenses is § 40A–29–4, N.M.S.A.1953 (2d Repl. Vol. 6).

 The fines and jail terms imposed for Counts I and II were within the trial court's sentencing authority and are valid. The jail term for Count III was within the trial court's sentencing authority and is valid. The fine of $200.00 for the Count III petty misdemeanor is unauthorized because $100.00 is the maximum authorized fine.

The convictions are affirmed. The sentences on all three counts are affirmed with the exception of the unauthorized fine under Count III. The cause is remanded with instructions to amend the judgment and sentence by imposing a fine under Count III consistent with § 40A–29–4, supra.

IT IS SO ORDERED.

HENDLEY and HERNANDEZ, JJ., concur.