This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**CIPRIANO BOTELLO,**

Defendant-Appellant.

NO. 26,997 **consolidated with 28,482**

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Silvia Cano-Garcia, District Judge**

Gary K. King, Attorney General
Nicole Beder, Assistant Attorney General
Santa Fe, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Carlos Ruiz de la Torre, Assistant Appellate Defender
Santa Fe, NM

for Appellant

### MEMORANDUM OPINION

**KENNEDY, Judge.**

Defendant Ciprano Botello appeals his convictions for three counts of third-degree criminal sexual contact in violation of NMSA 1978, Section 30-9-13(C) (2003) (amended 2009), and four counts of first-degree criminal sexual penetration in violation of NMSA 1978, Section 30-9-11(C)(1) (2003). He argues: (1) the charges against him should have been dismissed for insufficient evidence; (2) counts nine and ten are "carbon copies" of one another and were improperly submitted to the jury; (3) the court improperly allowed the State to amend the dates covered by counts nine and ten; (4) the court made several evidentiary errors; (5) he received ineffective assistance of counsel; and (6) the presence of cumulative error requires reversal. For the reasons set forth below, we affirm.

**BACKGROUND**

On February 17, 2004, Veronica Fuentes (Victim) approached officers of the Doña Ana County Sheriff's Department and reported she had been sexually abused by Defendant, her natural father. Victim was eighteen years old at the time she spoke with authorities and she alleged Defendant committed various sexual acts upon her during her childhood, roughly between the ages of six and fourteen years of age. Police investigated her allegations, and in doing so, conducted interviews with Defendant, Victim, Victim's sisters, and Victim's mother. At the conclusion of the

investigation, the State indicted Defendant on twelve counts of first-degree criminal sexual penetration and three counts of third-degree criminal sexual contact. Defendant entered a plea of not guilty and on April 17 and 18, 2006, the Doña Ana County District Court held a jury trial.

Victim testified first and served as the State's primary witness. She began by describing herself, her relationship to Defendant, her family, and her personal history. She then discussed her contact with police and the allegations she had made against Defendant. She testified that at various times during her childhood, Defendant repeatedly forced her to engage in numerous acts of oral and anal sex, masturbation and other sexual activity. The State used various school records, residences, and important milestones in Victim's life to establish the time frames during which each crime allegedly occurred. Under cross-examination, Defendant asked Victim about problems she experienced in school and at home as a youth and attempted to impeach her testimony regarding the dates of certain alleged crimes.

The State next called Victim's mother, Modesta Astorga (Mother), and sister, Evette Botello (Sister). Both confirmed that Victim was alone with Defendant for extended periods of time, but neither could confirm or deny that any instances of sexual abuse actually occurred. During cross-examination, Defendant asked Sister

3

about her statements to police during the investigation. Specifically, Defendant asked Sister about a statement she made to police in which she related Victim's allegation that her grandfather had abused her. The State objected to the testimony on the basis that, first, it was protected by the rape shield statute, NMSA 1978, Section 30-9-16(A) (1993), and second, constituted hearsay. The court sustained the objection on those grounds and disallowed any inquiry into the matter. Finally, the State called John Ordonez, one of the police officers who participated in the investigation. He described his qualifications and his first contact with Victim on the day she made the allegations against Defendant. He testified about the interviews he conducted and provided confirmation of various school records entered into evidence by the State.

After excusing Officer Ordonez, the State rested, and Defendant unsuccessfully moved for a directed verdict. The State then sought among other matters amendment of counts nine and ten, which were renumbered prior to submission to the jury, from the indictment's counts of eleven and thirteen, respectively. The court granted the State's motion and allowed, first, amendment of count nine from criminal sexual penetration between May 30, 1994, and May 29, 1995, to criminal sexual penetration between May 30, 1994, and May 29, 1996, (extending the date one additional year); and second, amendment of count ten from criminal sexual penetration between May

30, 1995, and May 29, 1996, to criminal sexual contact between May 30, 1994, and May 29, 1996, (extending the date one additional year and changing the crime). The court overruled Defendant's objections to these modifications.

Defendant testified as the sole witness during his case in chief. Speaking through an interpreter, he denied committing the crimes alleged by the State. Instead, he suggested Victim was lying out of vengeance. He testified that she was a problem child and his strict parenting style created friction and made her angry at him. He also testified she wanted to date boys at an early age and he refused to allow it. [Tr. Likewise, he continued, she had problems with the police, and the two fought a great deal. Finally, Defendant testified that his motorcycle could not accommodate two passengers. Thus, he stated, Victim's allegations that he had used the bike to transport her to secluded locations were inaccurate.

The jury returned a verdict of guilty as stated above, and Defendant was sentenced to seventy-two years in prison followed by a parole of at least five years. He appeals, and we analyze his arguments below under five broad categories: (I) sufficiency of the evidence, (II) counts nine and ten, (III) evidentiary matters, (IV) ineffective assistance of counsel, and (V) cumulative error.

**DISCUSSION**

## I.      Sufficiency of the Evidence

Defendant argues that the charges against him were not supported by sufficient evidence; as a result, the court improperly refused to dismiss them at the conclusion of the State's evidence. He cites *State v. Franklin*, 78 N.M. 127, 428 P.2d 982 (1967), and *State v. Boyer*, 103 N.M. 655, 712 P.2d 1 (Ct. App. 1985), and points out that no physical evidence linked him to the crimes, Victim was motivated to lie, no one besides Victim accused him of committing the crimes, and he continuously maintained his innocence throughout the proceedings against him. Even if such contentions are true, they do not provide proper grounds to reverse Defendant's convictions for insufficient evidence.

When reviewing a conviction under a sufficiency of the evidence standard, we "view the evidence in the light most favorable to the guilty verdict" and indulge all reasonable inferences and resolve all conflicts in the State's favor. *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. In order for evidence to support a conviction, there must be some direct or circumstantial evidence to support every element of the crime. *State v. Kent*, 2006-NMCA-134, ¶10, 140 N.M. 606, 145 P.3d 86. "We determine whether a rational fact[]finder could have found that each element of the crime was established beyond a reasonable doubt." *Id.*

We do not reweigh the evidence below or substitute our "judgment for that of the fact finder" if there is sufficient evidence to support the verdict. *State v. Mora*, 1997-NMSC-060, ¶ 27, 124 N.M. 346, 950 P.2d 789. The fact finder is always "free to reject [d]efendant's version of the facts," *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829 (filed 1998), and so, just because a defendant presents evidence supporting an acquittal, this Court is not required to reverse his conviction. *Id.*; *see State v. Hunter*, 101 N.M. 5, 7, 677 P.2d 618, 620 (1984) (holding that a jury may simply choose to believe the testimony of the victim over that of the defendant).

The jury was instructed on three counts of third-degree criminal sexual contact and returned guilty verdicts on all three. Specifically, the jury was instructed that in order to find Defendant guilty it must find that he touched Victim's breasts between May 30, 1992, and May 29, 1993, (count 4); that he caused Victim to touch his penis between June 1, 1993, and December 31, 1994, (count 9); that he touched or applied force to Victim's vulva between May 30, 1994, and May 29, 1996, (count 12); and that Victim was twelve years old or younger on each occasion. Defendant directs our attention to no instance where any elements of the above charges went unsupported. Indeed, we conclude that the State presented ample evidence to support the charges.

Victim testified that Defendant touched her breasts and vagina on numerous

occasions after they moved to New Mexico but before she temporarily moved to California. She was seven years old at the time. She stated that after she returned from California and prior to the birth of her sister, Cindy, Defendant caused her to touch his penis with her tongue and masturbate him. On numerous other occasions prior to her turning twelve, she stated that Defendant touched her vagina and the time frames during which these crimes occurred were supported, in part, through the introduction of Victim's school records.

The jury was also instructed on seven counts of first-degree criminal sexual penetration and returned guilty verdicts on four. Specifically, the jury was instructed that in order to find the Defendant guilty it must find that he inserted his finger into Victim's vagina between May 30, 1992, and May 29, 1996, (counts 1, 4, and 9); forced Victim to engage in cunnilingus with him between May 30, 1993, and May 29, 1996, (counts 3 and 8); forced Victim to engage in fellatio between June 1, 1993, and May 29, 1994, (count 5); caused Victim to engage in anal intercourse between June 1, 1993, and May 29, 1994, (count 6); and that Victim was twelve years old or younger on each occasion. As with the counts alleging criminal sexual contact, Defendant's brief fails to demonstrate any instance where an essential element went unsupported and our review of the evidence below reveals none.

Victim testified that Defendant inserted his finger into her vagina both immediately before and immediately after she moved to California. Likewise, she testified that he inserted his finger into her vagina at least once each year, when she was eight, nine, ten, eleven, and twelve years old. He forced her to allow him to perform cunnilingus on her, she testified, several times, at least once when she was eleven, and forced her to engage in anal sex with him at the canal. She also testified that he forced her to perform fellatio on him and that she was twelve years old or younger at the time of each encounter. As with the charges for criminal sexual contact, the State established the time frames during which each count occurred by introducing evidence of significant events in the Victim's life and connecting those events to particular encounters.

Defendant calls this Court's attention to no instance in which an essential element of any of the above crimes went unsupported, and neither have we found any. We therefore hold that the verdicts were supported by sufficient evidence.

**II.    Counts Nine and Ten**

At the close of the State's evidence, the district court allowed amendment of counts nine and ten to cover the period of time from May 30, 1994, to May 29, 1996. Both counts had previously covered only one year. In addition, the court allowed

amendment of count ten from criminal sexual penetration to criminal sexual contact. Defendant argues that both amendments were erroneous and require reversal. Modification of the dates, he contends, prejudiced his rights. Furthermore, he suggests that counts nine and ten were "carbon copies" of one another and made it impossible for the jury to distinguish one from the other.

Defendant contends, pursuant to *Franklin*, 78 N.M. at 127, 428 P.2d at 982, and *Boyer*, 103 N.M. at 655, 712 P.2d at 1, that extension of the timeframe covered by counts nine and ten requires reversal. We observe that Defendant's brief makes no argument regarding how such amendment resulted in prejudice. *See State v. Pina*, 90 N.M. 181, 187, 561 P.2d 43, 49 (Ct. App. 1977) (holding that a defendant must show prejudice to successfully challenge a variance of date). Our analysis of the amendment reveals none. Rule 5-204(C) NMRA provides, "[t]he court may at any time allow the indictment or information to be amended in respect to any variance to conform to the evidence." Such amendments, however, must not prejudice "substantial rights of the defendant," or they "shall be grounds for . . . acquittal." *Id*. Here, the court acted in accordance with the rule, and though Defendant alleges prejudice, he makes no specific contention to demonstrate how it occurred. *See, e.g.*, *Perez v. Gallegos*, 87 N.M. 161, 162, 530 P.2d 1155, 1156 (1974) (holding that

10

generalized attacks on errors below are not enough). We hold that the district court acted properly.

Defendant also argues that counts nine and ten constitute "carbon copies" of one another. As a result, he claims, this Court must reverse those convictions because it was impossible for the jury to distinguish between the two. In *State v. Baldonado*, 1998-NMCA-040, ¶ 21, 124 N.M. 745, 955 P.2d 214, this Court held that the state must "provide reasonable notice of [the] charges against a person and a fair opportunity to defend; rights which may not be ignored or trivialized." (internal quotation marks and citation omitted). Accordingly, the various charges against a defendant must be distinguishable, so that he may "avail himself of his conviction or acquittal for protection against a further prosecution for the same cause[.]" *United States v. Cruikshank*, 92 U.S. 542, 544 (1875). Here, though counts nine and ten relate to the same period of time, their wording clearly indicates that each charges a different crime. Count nine alleges Defendant "caused the insertion . . . of [his] finger into the vagina of [Victim]," and count ten alleges Defendant "touched or applied force to the vulva of [Victim.]" We hold that such charges were properly separate in their description of culpable behavior, and affirm the district court on this issue.

**III.    Evidentiary Matters**

Defendant contends that the district court improperly ruled on three evidentiary matters. He asserts that the court erred in disallowing cross-examination of Sister about alleged statements made to her by Victim, that the court improperly excluded Defendant's own testimony regarding statements made by Victim, and that the court should not have allowed Officer Ordonez to testify regarding his opinion of Defendant's guilt. We will not reverse the district court's ruling on an evidentiary matter in the absence of a clear abuse of discretion. *See State v. Sarracino*, 1998-NMSC-022, ¶ 20, 125 N.M. 511, 964 P.2d 72. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the trial court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." *Rojo*, 1999-NMSC-001, ¶ 41 (internal quotation marks and citation omitted).

During cross-examination of Sister, Defendant inquired about her interview with police.

Q: . . . you also talked to this police officer; is that correct, Mr. Ordonez?

A: Yes.

. . . .

Q: In that statement, you indicated that [Victim] indicated to you that

12

your grandfather touched her inappropriately.  Do you know anything about that?

A:    No.

Q:    Do you recall saying that?

A:    No.

Defendant never produced the police statement to impeach the witness.  Instead, he continued to ask her if she remembered making it, and she continued to reply in the negative until the State asked for a bench conference.  At the bench, the State objected to the line of questioning and urged the court to make the Defendant move on.  The court agreed, and held that the evidence was hearsay and inadmissible under the rape shield statute.  NMSA 1978, § 30-9-16(1993).  We hold that such a ruling did not constitute an abuse of discretion.  Section 30-9-16 provides that any evidence of a victim's past sexual conduct known prior to trial must be analyzed in an in camera hearing on written motion by the party seeking admission.  In this case, Defendant seems to have known about the statement prior to trial, and the first time the court was made aware of it was when he sought to introduce it.  When asked why he did not introduce the evidence sooner, defense counsel stated, "I thought I'd bring it up through this witness.  She's the one that said it to the police officer."  Thus, without an in camera hearing pursuant to Section 30-9-16, the court properly excluded the

13

evidence. In addition, the testimony likely constituted inadmissible hearsay. *See* Rule 11-802 NMRA. At the time Defendant attempted to introduce this evidence, the declarant (Victim) had already testified. Defendant never asked Victim about the statement. Instead, he sought to have Sister testify to what Victim had told her. Thus, Defendant was precluded from introducing it for purposes of impeachment. *See* Rule 11-608(B) NMRA. Likewise, in his brief, Defendant offers no exception to the hearsay rule under which this evidence would have been admissible. We therefore hold that the district court did not abuse its discretion in excluding the testimony.

Later in the trial, on direct examination, Defendant sought to testify regarding threats Victim made against him and the State objected. The court sustained the objection on the basis that the evidence was inadmissible hearsay. Furthermore, the court concluded the statement was not admissible for impeachment purposes because Defendant had not inquired about it on cross-examination of Victim. Defendant argues that the court erred. But on such facts, we hold that the court did not abuse its discretion. As with the alleged statements made by Victim to Sister, considered above, any statement by Defendant about threats made against him by Victim was inadmissible hearsay. *See* Rule 11-802. Defendant had not asked Victim about the statement prior to his attempt to introduce it through Defendant's testimony, and his

brief offers no exception to the hearsay rule under which it would be admissible.

Defendant's last point of error regarding evidentiary matters concerns the testimony of Officer Ordonez. Defendant contends that the district court improperly allowed Ordonez to suggest "that certain witnesses were more credible than others and that [Defendant] had in fact committed the charged crimes." Defendant admits that this issue was unpreserved below and he provides no citation to the record demonstrating exactly what testimony he finds objectionable. Generally, this Court will not consider unpreserved issues. *State v. Varela*, 1999-NMSC-045, ¶ 25, 128 N.M. 454, 993 P.2d 1280. Furthermore, Defendant bears a duty to provide this Court with citations to the record proper, Rule 12-213(A)(4) NMRA, and "[w]here there is a doubtful or deficient record, every presumption must be indulged by the reviewing court in favor of the correctness and regularity of the [trial] court's judgment." *Rojo*, 1999-NMSC-001 ¶ 53 (internal quotation marks and citation omitted). We therefore refuse to consider this argument.

**IV.     Ineffective Assistance of Counsel**

Defendant argues that he received ineffective assistance of counsel. In order to successfully make such a claim for the first time on direct appeal, a defendant must at least state a prima facie case for ineffective assistance, which requires two elements:

first, that the attorney's performance fell below that of one who is reasonably competent; and second, that the attorney's deficient performance prejudiced defendant. *State v. Hester*, 1999-NMSC-020, ¶ 9, 127 N.M. 218, 979 P.2d 729. Absent evidence to the contrary, we presume an attorney's competence. *State v. Jacobs*, 2000-NMSC-026, ¶ 48, 129 N.M. 448, 10 P.3d 127. If the defendant can state a prima facie case for ineffective assistance, we may remand the matter to the district court for an evidentiary hearing. If he fails to do so, he must pursue his claim in a habeas proceeding. *State v. Roybal*, 2002-NMSC-027, ¶ 19, 132 N.M. 657, 54 P.3d 61. Our courts have expressed a preference for pursuing ineffective assistance claims in habeas proceedings. *State v. Baca*, 1997-NMSC-059, ¶ 25, 124 N.M. 333, 950 P.2d 776 ("A record on appeal that provides a basis for remanding to the [district] court for an evidentiary hearing on ineffective assistance of counsel is rare. Ordinarily, such claims are heard on petition for writ of habeas corpus."); *see State v. Martinez*, 1996-NMCA-109, ¶ 25, 122 N.M. 476, 927 P.2d 31 (stating that "[t]his Court has expressed its preference for habeas corpus proceedings over remand when the record on appeal does not establish a prima facie case of ineffective assistance of counsel").

Defendant fails to state a prima facie claim for ineffective assistance. He claims

16

several shortcomings, among them, that his attorney failed to file motions in limine prior to trial, that he did not cross-examine Victim regarding statements she allegedly made to her sister, that he failed to present evidence that Victim was motivated to lie, and that he inadequately reviewed Defendant's statement to police with Defendant prior to trial. Defendant fails to adequately argue with any particularity how such shortcomings, if true, were unjustified, transgressed the standard of representation or would call the jury's verdict into question. As briefed, it is a speculative laundry list. Furthermore, Defendant's contentions are not properly supported by the record on appeal. For these reasons, and given our preference for resolving such claims in collateral proceedings, *see Martinez*, 1996-NMCA-109, ¶ 25, we hold that Defendant's ineffective assistance claim must be pursued, if at all, in a habeas corpus proceeding.

**V.    Cumulative Error**

Finally, Defendant argues that cumulative error requires reversal of his convictions. This Court will reverse for cumulative error "when a series of lesser improprieties throughout a trial are found, in aggregate, to be so prejudicial that the defendant was deprived of the constitutional right to a fair trial." *State v. Duffy*, 1998-NMSC-014, ¶ 29, 126 N.M. 132, 967 P.2d 807. In this case, Defendant has failed to

demonstrate *any* error, and when there is no error, "there is no cumulative error." *State v. Aragon*, 1999-NMCA-060, ¶ 19, 127 N.M. 393, 981 P.2d 1211. We therefore reject Defendant's cumulative error argument.

**CONCLUSION**

For the above reasons, we affirm Defendant's convictions.

**IT IS SO ORDERED.**

_____
**RODERICK T. KENNEDY, Judge**

**WE CONCUR**:

_____
**CYNTHIA A. FRY, Chief Judge**

_____
**TIMOTHY L. GARCIA, Judge**